[Civ. Nos. 13304, 13305. First Dist., Div. Two. Jan. 8, 1948.]

WESLEY KING, Appellant, v. FRANK C. MORTIMER, as Building and Loan Commissioner, etc., et al., Respondents.

(Two Cases)

Erskine, Erskine & Tulley, Morse Erskine and Alden Ames for Appellant.

Fred N. Howser, Attorney General, Lenore 'Underwood, John J. Dailey and Herbert B. Wenig, Deputy Attorneys General, Gardiner Johnson and Roy D. Reese for Respondents.

NOURSE, P. J.—The plaintiff and appellant sued as assignee and "on behalf of" a number of depositors in the Pacific States Savings and Loan Company. A list of the various assignors and the amount of their claims was attached as an exhibit and made a part of the complaint.

The actions were consolidated for the purposes of the demurrer, and are treated together throughout.

The complaint is framed in two counts, differing in prayers only, as hereinafter mentioned.

After alleging the corporate existence of the defendant Pacific States Company and the official capacity of the defendant Frank C. Mortimer as Building and Loan Commissioner the complaint sets forth a series of events which may be best summarized in chronological order.

Commencing early in 1931 and until March 4, 1939, when Ralph Evans, the then Building and Loan Commissioner, seized the assets and properties of the defendant corporation, the said corporate defendant had embarked upon a dual program of widespread advertising and solicitation of business and a plan of systematically reacquiring its "fidelity" certificates or deposit accounts from its various depositors for a fraction of the face value thereof.

The advertising campaign was based on guarantees of interest of over 4 per cent and the right of immediate withdrawal of funds or withdrawal on short notice.

The plan for reacquisition of the deposit accounts was accomplished by employing various agents and agencies, including, *inter alia,* the Pacific States Auxiliary Corporation, State Guaranty Auxiliary Corporation, and the Robert S. Odell & Company. The function of these agents and agencies was to importune the depositors of the Pacific States Company "by various schemes, devices, threats and misrepresentations," to sell their deposit accounts to them for sums greatly less than the face value of the deposit certificates— in some cases for about 50 cents on the dollar.

From the period of 1931 to March 1939 inclusive, by the means aforesaid, the defendant Pacific States Company was able to acquire deposit accounts having an aggregate face value of $26,632,004.01 for an amount not in excess of $17,336,896.46.

During the period from 1932 to 1936, the Pacific States Company refused to pay its matured notices; from February, 1934, "and from some time prior thereto and ever since said date" the corporate defendant was and is insolvent, as the defendants well knew. Since the corporation was seized by the Building and Loan Commissioner the right to possession of the assets and properties of the defendant corporation was in litigation; but the Building and Loan Commissioners, "and particularly the defendant Frank C. Mortimer, have proceeded with the liquidation of the business, property and assets of said defendant Pacific States Savings and Loan Company."

In 1932, the then Building and Loan Commissioner had directed the corporate defendant to cease and desist from purchasing its own certificates at discount, and from then on the defendants persisted in their course of conduct knowing of its illegality.

The plaintiff's assignors filed timely claims with the Building and Loan Commissioner but these claims were rejected in 1943. The complaint does not specifically allege when the payments were made to plaintiff's assignors. But from the exhibit attached showing the claims filed it appears that by far the greater portion of these payments were made in 1934-1936, which was the period of the alleged insolvency.

Upon the foregoing statement of facts the plaintiff alleges

as a first cause of action that, because of the illegal conduct of the Pacific States Company, the transfers of deposit accounts to it by the plaintiff's assignors were void and that therefore the corporate defendant was unjustly enriched to the value of the difference between the face value of the said deposit accounts and the amounts paid therefor.

The second cause of action is predicated on the first and pleads a debt for money had and received in the amount of $672,680.

The defendants interposed general demurrers for insufficient facts and raised the bar of the statute of limitations as set forth in section 338 of the Code of Civil Procedure, and special demurrers on several grounds. The court entered judgment for the defendants, sustaining the demurrers without leave to amend.

 Since the demurrer went to the original complaint it would seem to follow under the recent decisions that, unless it shows on its face that it is incapable of amendment, denial of leave to amend constituted an abuse of discretion, (*Davis* v. *Wood,* 61 Cal.App.2d 788 [143 P.2d 740]; *Veterans' Welfare Bd.* v. *City of Oakland,* 74 Cal.App.2d 818 [169 P.2d 1000]; *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Columbia Pictures Corp.* v. *De Toth,* 26 Cal.2d 753 [161 P.2d 217, 162 A.L.R. 747]; *Speegle* v. *Board of Fire Underwriters,* 29 Cal. 2d 34 [172 P.2d 867]) irrespective of whether leave to amend is requested or not. (Code Civ. Proc., § 472c.)

In support of the demurrer respondents contend that the acts complained of were only ultra vires and voidable rather than void; and being voidable a rescission must be shown.

 It must be conceded that the complaint does not plead sufficient facts upon which the transactions complained of could be held void. Heretofore the same parties representing some of the assignors in this action brought a similar action entitled *King* v. *Pacific States S. & L. Co.,* 26 Cal.2d 333 [158 P.2d 561], based on the charges of fraud and misrepresentations connected with the sale of the assignors' interests. That case was founded upon charges of fraud. The Supreme Court held that the evidence of fraud was lacking and affirmed the judgment of the trial court and its findings that no fraud had been committed. The case we have here is also founded upon charges of fraud. Unless the plaintiff can amend his complaint to show affirmatively wherein the

contracts involved were void and not merely voidable, we must assume that if the plaintiff can recover at all it must be on the theory that the transactions complained of were voidable because of the fraudulent misrepresentations which brought them about. On this theory it would become necessary for him to rescind the transactions and restore everything of value which he had received, or to plead facts showing that plaintiff's assignors were entitled in any event to retain what they had received. (4 Cal.Jur. pp. 767-769.) This principle is found in section 1691 of the Civil Code which reads: "Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: (1) He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and, (2) He must restore to the other party everything of value which he has received. . . ."

However, the question of promptness in the act of rescission, knowledge of the right to rescind and necessity to restore are all questions of fact and, though good practice would dictate that these matters should be pleaded in the complaint, it is apparent that the complaint is capable of amendment to properly tender the issue.

The respondents next argue that it may be "inferred" from the complaint that the plaintiff is suing "on behalf of" his assignors, and hence may not maintain the action. This contention is predicated on the familiar rule that the bare assignee of a tort claim, having no interest in the subject matter of the suit, may not maintain the action. This is not the applicable rule here. The true situation of the plaintiff is an assignee for collection, and it is well settled that the assignee for collection, if he has the apparent legal title, may maintain the action (*Hammell* v. *Superior Court,* 217 Cal. 5 [17 P.2d 101]; *Morrison* v. *Veach,* 190 Cal. 507 [213 P. 945]; *Bechtel* v. *Baglieto,* 13 Cal.App.2d 495 [57 P.2d 192]) even though the assignment is without consideration. *Cohn* v. *Thompson,* 128 Cal.App.Supp. 783 [16 P.2d 364].

The argument that the complaint is fatally defective because it shows on its face that a portion of the claim is res judicata is untenable. Res judicata is not a matter to be raised by demurrer. (Code Civ. Proc., § 430.)

■ Since the complaint herein may be amended to state facts sufficient to constitute some cause for relief, the judgment of the trial court must stand or fall on the question of the statute of limitations.

The respondents urge that section 338 of the Code of Civil Procedure is the applicable statute—providing that actions for fraud must be brought within three years after the discovery of the fraud.

On the other hand the appellant urges us to find that the applicable statute is section 348 of the Code of Civil Procedure: "To actions brought to recover money or other property deposited with any . . . building and loan association, or savings and loan society, there is no limitation." The further contention that the following language of the same section is inapplicable is hereinafter discussed: "This section shall not apply to . . . building and loan associations, and savings and loan societies which have become insolvent and are in process of liquidation and in such cases the statute of limitations shall be deemed to have commenced to run from the beginning of the process of liquidation; . . . ."

The appellant is correct in his contention that this action falls within the scope of section 348 *supra*. While this section has been frequently referred to, there appears no case in which the precise point in question was involved. ■ However it is a prime rule of statutory construction that that construction will be given which will effectuate, rather than defeat, the statute. (Civ. Code, § 3541.)

■ It is conceded by the authorities that section 348 prescribes a general rule, and any claim for the recovery of moneys deposited with the institutions designated therein comes within its purview, unless expressly excepted therefrom. (*Glassell Dev. Co.* v. *Citizens' Nat. Bank,* 191 Cal. 375 [216 P. 1012, 28 A.L.R. 1427]; *Merchants Nat. Bank* v. *Continental Nat. Bank,* 98 Cal.App. 523 [277 P. 354].) "By the express provisions of section 348 of the Code of Civ. Proc., there is no limitation to the time within which an action may be brought to recover money deposited with a bank, [or building and loan association] . . . . by an amendment to section 340 of the same code, . . . . the legislature made an exception to the general rule laid down in section 348, taking from its purview but one class of actions by depositors against banks [building and loan associations], namely, those 'for the payment of a forged or raised check,' and leaving all

other classes of actions by depositors still without time limitation . . . . and it must be presumed that the legislature in enacting the amendment to section 340 intended to create no exception [to sec. 348] other than that therein in terms specified, [citing cases], since an express exception excludes all others. . . ." *Merchants Nat. Bank* v. *Continental Nat. Bank, supra,* p. 532.

 There is nothing in the language of section 348 which distinguishes between actions ex delicto and ex contractu. Indeed, it may be assumed that the majority of cases involving suits by depositors to recover from the bank or other deposit company arise by reason of some fraud or breach of duty rather than arising solely on the contract of deposit. To give a more narrow interpretation of this section would be to deprive it of most of its effect.

 However, the appellant's assumption that the second paragraph of section 348, above quoted, which removes from the exception actions against building and loan associations which are in the course of liquidation, does not here apply, is erroneous. When a party seeks to avail himself of a part of a statutory provision, he is bound by the whole thereof. Here the complaint alleges, "that since the 4th day of March, 1939, the right to the possession of the said building and loan commissioners has been in constant litigation; but nevertheless, said building and loan commissioners, and particularly the defendant Frank C. Mortimer have proceeded with the liquidation of the business, property and assets of said defendant Pacific States Savings and Loan Company." This allegation, absent some other controlling factor, would clearly be sufficient to take the case out of the protection of section 348, and subject it to the general statute of limitations beginning to run on the day the commissioner instigated liquidation proceedings.

 However, there is a further statutory provision which is mentioned by both parties and dismissed altogether too lightly. Section 13.16 of the Building and Loan Association Act (Stats. 1931, p. 483; Deering's Gen. Laws, 1937, Act 986) provides: ". . . . and upon the expiration of the time fixed for the presentation of claims, the commissioner shall prepare or cause to be prepared in duplicate a . . . . complete schedule of all claims presented, specifying by classes those that have been approved and those that have been disapproved, and shall file the original with the court

and the duplicate in the office of the commissioner. . . . Action to enforce the payment of or to establish any rejected claim must be brought and service had within four months from and after the date of filing of the schedule of claims with the proper court; otherwise all such actions shall be forever barred.''

Under this procedure, all parties with subsisting claims against a building and loan association, at the time that the association is seized by the Building and Loan Commissioner, must present their claims to the commissioner for investigation and action.

Where an administrative procedure is required by statute, the administrative remedy must be exhausted before the courts will take jurisdiction of the same subject matter. *Jackson* v. *Howser,* 66 Cal.App.2d 870 [153 P.2d 423]; *People* v. *Keith Railway Equip. Co.,* 70 Cal.App.2d 339 [161 P.2d 244]; *Alexander* v. *State Personnel Board,* 22 Cal.2d 198 [137 P.2d 433]; *Steen* v. *Board of Civil Service Commissioners,* 26 Cal.2d 716 [160 P.2d 816].

Under section 13.16 the right to sue on subsisting claims is suspended during the period in which the claims are under consideration by the Building and Loan Commissioner. The statute of limitations begins to run at the time of the filing of the *schedule* as provided in the said section. *Brashear* v. *Intermountain Building & Loan Ass'n.,* 109 F.2d 857.

It is the contention of the respondents that since the Building and Loan Association Act provides that the Building and Loan Commissioner may ''sue and defend'' actions while in the course of liquidation, it follows that the statute of limitations runs from the time that the liquidation proceeding is commenced, and within that time suit must be brought.

This argument is nonsequitur. It is expressly provided in section 13.16 of the Building and Loan Association Act, *supra,* that claims *must* be filed with the commissioner, except as to investors appearing on the books of the association at the time liquidation was begun. The pertinent language in answer to this contention is found in section 13.16, *supra,* · ''All claims, demands or causes of action of whatever nature, *and regardless of whether or not a suit shall be pending to enforce the same at the time of the taking possession of the assets of the association by the commissioner,* of creditors, and

persons other than investors . . . . must be presented to the commissioner in writing . . . . and any such claim, demand, or cause of action not so presented shall be forever barred. Any investor, without presenting a claim, shall be entitled, as to any dividends hereafter declared, to share in such dividends to the extent . . . . of any claim shown by the books of the association to exist in his favor against the association." (Deering's Gen. Laws, 1937, Act 986.) (Emphasis ours.) That parties in the position of these claimants must file claims to recover is concluded by *Allen* v. *California Mutual Building & Loan Assn.*, 22 Cal.2d 474 [139 P.2d 321].

■ In order that a complaint be vulnerable to attack by demurrer raising a specific statute of limitations, it must affirmatively appear on the face of the complaint that the whole of the cause of action is necessarily barred by the pleaded statute, (*Pike* v. *Zadig*, 171 Cal. 273 [152 P. 923]; *Vassere* v. *Joerger*, 10 Cal.2d 689 [76 P.2d 656]; *Antioch College* v. *Barnhart*, 49 Cal.App.2d 171 [121 P.2d 521]; also *Bank of San Luis Obispo* v. *Wickersham*, 99 Cal. 655 [34 P. 444]; *Pedro* v. *Soares*, 18 Cal.App.2d 600 [64 P.2d 776]), and hence the judgment cannot be sustained on that ground.

■ However, the complaint is uncertain in that it fails to state clearly the date of the filing of the claims with the Building and Loan Commissioner to make it affirmatively appear that the filings were "within the time prescribed by law."

The complaint contains allegations of legal conclusions of both illegality and fraud but the facts to support either conclusion are not clearly pleaded. The complaint should be amended to plead the facts upon which plaintiff relies to support either conclusion.

The judgment is reversed with directions to give plaintiff a reasonable time within which to amend his complaint.

Dooling, J., concurred.

A petition for a rehearing was denied February 7, 1948, and respondents' petition for a hearing by the Supreme Court was denied March 8, 1948. Gibson, C. J., Schauer, J., and Spence, J., voted for a hearing. Shenk, J., did not participate on petition for hearing.