[L. A. No. 23083.   In Bank.   Feb. 15, 1955.]

TEMESCAL WATER COMPANY (a Corporation) et al., Appellants, v. DEPARTMENT OF PUBLIC WORKS et al., Respondents; RIVERSIDE COUNTY FLOOD CONTROL AND WATER CONSERVATION DISTRICT, Intervener and Respondent.

Clayson, Stark & Rothrock and Donald D. Stark ·for Appellants.

Robert E. Reed, Henry Holsinger, Mark C. Nosler and Gavin M. Craig for Respondents.

Ray T. Sullivan, Jr., County Counsel (Riverside), and Leo A. Beegan, Deputy County Counsel, for Intervener and Respondent.

EDMONDS, J.—The Division of Water Resources of the Department of Public Works issued a permit authorizing the Riverside County Flood Control and Water Conservation District to appropriate annually a quantity of water from the Bautista Creek, a tributary of the San Jacinto River. By this proceeding in mandamus, Temescal Water Company and the Elsinore Valley Municipal Water District are endeavoring to compel the division to withdraw and cancel the permit and to deny the district's application. The appeal is from a judgment in favor of the conservation district and the department which followed an order sustaining, without leave to amend, demurrers to the petition for writ of mandate.

According to the petition, Temescal is a mutual water company supplying water for domestic use in the City of Corona and for irrigation in the city and its vicinity. To provide for its shareholders, the company has acquired rights in the flow of the San Jacinto River. These rights, based in part upon long appropriative use and also upon a permit from the Department of Public Works, allow the company to appropriate a specified quantity of water by direct diversion and an additional amount by storage. Pursuant to these rights, Temescal has transported substantial quantities of water to Corona and vicinity, where it has been placed to a beneficial use.

The Elsinore Valley Municipal Water District, it was alleged, includes within its boundaries the city of Elsinore, Lake Elsinore and the valley surrounding the lake. Except for a negligible amount of local run-off, the San Jacinto River with its tributaries is the sole source of water to replenish the lake and the underground water supply of the valley. A lowering in water level of the lake increases its salinity, causing the death of fish and much offensive odor. At the present time, the entire lake is dry and its bed unsightly. Property values and the general prosperity of the municipal district depend upon an adequate supply of fresh water in the lake and the maintenance of the underground water levels in the valley.

Upon application by the conservation district, the petition continued, the Division of Water Resources issued a permit authorizing the district to appropriate "not to exceed 3,070

acre feet of water per annum from the waters of'' Bautista Creek. There is no unappropriated water available in the river and the creek to supply the district pursuant to its application. On the contrary, at the present time and for many years past there has not been sufficient water in the river system to satisfy the requirements of the owners of vested riparian and appropriative rights.

The conservation district, as intervener, joined with the other respondents in demurring to the petition upon the ground that no cause of action was stated. The demurrers were sustained and an order entered discharging the alterna-. tive writ and denying a peremptory one.

As grounds for reversal of the judgment which followed that order, the water company and the municipal district contend that the petition states facts entitling them to a writ of mandate under section 1085 of the Code of Civil Procedure. Their position is that the Department of Public Works, under section 1375 of the Water Code,[1] is specifically enjoined to deny an application for a permit to appropriate water when no unappropriated water is available to the applicant. As they read section 1375, the existence of unappropriated water is a jurisdictional fact which cannot be finally determined by the division, but upon which they are entitled to a trial de novo. Assuming that the facts alleged in the petition are insufficient to state a cause of action, the argument continues, the trial court abused its discretion when it sustained the demurrers without leave to amend.

The Department of Public Works concedes that a decision by it upon an application for a permit to appropriate water is subject to judicial review. It agrees, also, that the proper proceeding for that purpose is by way of writ of mandate. However, according to the department, the scope of review should be the qualified one established by section 1094.5 of the Code of Civil Procedure and the decisions construing that statute. The petition of Temescal is attacked as not stating facts sufficient to justify the relief demanded. More particularly, it is claimed, the allegations of the petition

---

[1]''As prerequisite to the issuance of a permit to appropriate water the following facts must exist:

''(a) There must be an applicant.

''(b) The application must contain the matter and information prescribed by this division and be in the form required by the department.

''(c) The intended use must be beneficial.

''(d) There must be unappropriated water available to supply the applicant.

''(e) All fees due must be paid.''

clearly show that the petitioners are entitled to no relief, and the trial judge did not abuse his discretion in denying leave to amend.

Authority for the Division of Water Resources of the Department of Public Works to administer the appropriation and use of unappropriated water, now included in Divisions 1 and 2 of the Water Code, stems from the Water Commission Act of 1913. (Stats. 1913, ch. 586, p. 1012.) The main purpose of that legislation was to provide an orderly method for the appropriation of such waters (*Bloss* v. *Rahilly*, 16 Cal.2d 70, 75 [104 P.2d 1049]), and substantial changes were made in the procedure by which an appropriation was initiated.

The statute was construed in *Tulare Water Co.* v. *State Water Com.*, 187 Cal. 533 [202 P. 874]. There, the company's application for a permit to appropriate water from the flow of the Kern River was denied without a hearing, and the company sought writs of mandate and certiorari to compel the commission to issue it. General demurrers to the petition were sustained without leave to amend.

Upon appeal, the company contended that, when an application in due form was filed, it became the duty of the commission, as a ministerial act, to issue a permit, and mandate was the proper remedy to compel it to do so. In the alternative, it was suggested that if the commission considered an application and determined rights as a judicial function, it had refused to exercise its authority and the refusal to do so was reviewable by certiorari.

The court assumed, on the basis of the pleadings, a full compliance with the prescribed conditions for obtaining a permit and that there was unappropriated water in the river to supply the petitioner's demands. It then pointed out the mandatory nature of the language of the sections of the act governing the issuance of a permit. After quoting in part sections 17 and 15 of the statute,[2] the court said:

"If any discretion was vested in the commission, or any matter submitted for judicial consideration, it was to determine whether there was any unappropriated water in the

[2]Section 17: "Any person . . . may apply for and secure from the state water commission, in conformity with this act and in conformity with reasonable rules and regulations . . . [of] the state water commission, a permit for any unappropriated water. . . ."

Section 15. "The state water commission shall allow, under the provisions of this act, the appropriation of unappropriated water or of the use thereof. . . ."

Kern River at that time subject to this proposed appropriation.

"The commission surely does not possess and could not be invested with power to arbitrarily deny an application made in conformity to the law for the appropriation of water that was subject to appropriation.

"The purpose of the act is clearly to permit any person or corporation desiring to make any of the enumerated beneficial uses of waters of the state, not otherwise utilized, to avail itself of this right of appropriation.

"Under the law in force prior to the adoption of this act (Civ. Code, §§ 1410-1422) no permission was required for the appropriation of waters of the state. All that was required to create a preferential right to such water was to actually appropriate it to some authorized beneficial use, or to make a water filing to be followed with due diligence by an actual user.

"The obvious aim of the Water Commission Act was not to abolish, but to regulate and administer, this privilege.

"The positive right to such permit is granted by section 17 of the act to any person who makes application as provided by the act and the rules of the commission." (P. 536.)

The court then considered the nature of the commission's function in determining whether the water claimed was subject to appropriation. It pointed out that by section 10 of the act,[3] the commission was authorized to investigate the water source to which a claim was made, to take testimony with regard to the rights existing in it, and "to ascertain whether or not such water . . . is appropriated under the laws of this state." The court said:

"While it appears from the provisions above quoted that the act is intended to authorize an investigation, and the exercise of some degree of discretion by the Water Commission as to the sufficiency of the application, and as to the existence of water subject to appropriation, no formal hearing is prescribed, and no authority granted to judicially determine the fact as to unappropriated water, or to adjudi-

---

[3]Section 10: "The state water commission is hereby authorized and empowered to investigate for the purpose of this act all streams . . . or other bodies of water, and to take testimony in regard to the rights to water or the use of water thereon or therein, and to ascertain whether or not such water, or any portion thereof, or the use of said water or any portion thereof, heretofore filed upon or attempted to be appropriated by any person, firm, association, or corporation, is appropriated under the laws of this state."

cate conflicting claims that might exist thereto. Even if a hearing could be required, the commission is without jurisdiction to finally determine the existence or nonexistence of water subject to appropriation, and in such a case its denial of an application, if held to be a judicial determination of the right, would leave the petitioner without remedy, as no appeal is provided for, and *certiorari* would only go to the regularity of the proceeding and not to the merits of the ruling.

"In view of the several other powers and duties devolving upon the Water Commission under this act in the supervision of the distribution of water subject to appropriation, and in determining the rights and obligations of interested parties, in which hearings of a judicial nature are provided for with much particularity, and provision is made for review of action of the Water Commission by the courts, it is fair to conclude that it was not intended to grant to the commission in the matter of this preliminary permit to file upon unappropriated water more than a supervisorial discretion in the matter of granting such permits." (P. 537.)

Mandamus was held to be a proper remedy to compel "a reasonable exercise of such discretionary powers as are granted by the act," because, traditionally, that writ lies to correct an abuse of discretion. The court said: "As in all cases of ministerial duty the obligation to perform depends upon the determination of the existence of certain prerequisite facts, but where such facts exist, the duty is mandatory.

"Mere authority to decide as to the existence of a given fact does not necessarily take the official or board so deciding beyond the reach of a writ of mandate, especially where there is no remedy by appeal." (P. 538.)

In a concurring opinion, Chief Justice Shaw took the position that, in exercising the statutory powers conferred upon it, the commission performed no judicial function. The only basis for construing the statute as authorizing judicial action, he said, was the provision requiring it to make an investigation in regard to the amount, if any, of unappropriated water. However, any attempt by the Legislature to invest the commission with the power to adjudicate rights in the flow of the stream would be contrary to section 1 of article VI of the Constitution and beyond its power. "For this reason," he concluded, "I am of the opinion that the act confers no judicial power upon the Water Commission, and if it purported to do and so far as it may purport to

do so it would·be and is without effect. The consequence is that any award it assumed to make in the exercise of such purported judicial power would be absolutely void and that *certiorari* would not lie to review its action in that regard." (P. 543.)

In *Department of Public Works* v. *Superior Court,* 197 Cal. 215 [239 P. 1076], the Division of Water Rights issued a certificate under section 12 of the act.[4] A protestant sought to review the department's determination by certiorari, and the department then commenced a proceeding to prohibit the superior court from hearing the matter. One basis of the decision which ordered the issuance of a writ of prohibition was similar to the reasoning in the Tulare case. In response to the contention that the department acted judicially when determining "due diligence," "good faith" and "good cause shown," the court said: "In a certain sense the determination of those matters involves the weighing of facts and arriving at conclusions from those facts and while such matters are common in a judicial proceeding we think their determination under that section is of an administrative or ministerial character only. The section provides for no notice to parties interested, contains no provision for a hearing or for procedure looking to the adjudication of the rights of anyone. The conclusions which the petitioners arrive at under whatever investigation they may see fit to make pursuant to the application are merely for their own guidance in the administration of their duties under the section. Their conclusions and determinations in that respect are ineffectual for any other purpose and their action under the section does not constitute a hearing and a determination of a controversy in a judicial sense."

Considering the availability of certiorari to review the department's determination, the court reasoned that the use of· that writ requires the exercise of a judicial function by the inferior tribunal, board or officer. The concurring opinion of Chief Justice Shaw in the Tulare case was cited as sup-

---

[4]Section 12: "The state water commission shall have authority to, and may, for good cause shown, upon the application of any appropriator or user of water under an appropriation made and maintained according to law prior to the passage of this act, prescribe the time within which the full amount of the water appropriated shall be applied to a useful or beneficial purpose; *provided,* that said appropriator or user shall have proceeded, with due diligence . . . to carry out the work necessary to put the water to a beneficial use; and in determining . . . said time said commission shall . . . take into consideration . . . the good faith of the appropriator. . . ."

porting the proposition that the Legislature is not empowered to vest judicial power in the department because it could not constitutionally "give judicial power to any general state board or tribunal." For that reason, it was held, "the proceeding for the writ of review lacks one of the elements essential to its proper determination." (Pp. 220, 221, 222.)

The appellants contend that, under the Tulare and Department of Public Works cases, the proper procedure for determining whether there is unappropriated water available to an applicant is the traditional writ of mandate. The respondents point out that there have been several amendments to the sections of the act considered in the Tulare case, and the duty of the department with regard to the issuance of a permit no longer is the purely ministerial one provided by the original statute. As they read these changes, it was the intention of the Legislature to create a proceeding which, essentially, is the administrative hearing contemplated by section 1094.5 of the Code of Civil Procedure, and that section should govern a review of the department's determination.

In 1917, section 15 of the act, which was deemed controlling in the Tulare case, was amended to provide that the commission shall allow "the appropriation for beneficial purposes of unappropriated water unless, in the opinion of the said commission, such appropriation would be detrimental to the public welfare." (Stats. 1917, ch. 133, p. 194.) Again, in 1921, section 15 was amended to require the commission to allow the appropriation of unappropriated water "under such terms and conditions as in the judgment of the commission will best develop, conserve and utilize in the public interest the water sought to be appropriated. . . . The commission shall reject an application when in its judgment the proposed appropriation would not best conserve the public interest." (Stats. 1921, ch. 329, p. 443; now Wat. Code, §§ 1253, 1255.)

In 1923, the Legislature added sections 1a, 1b, 1c, and 1d (Stats. 1923, chs. 36, 37, pp. 161, 162.) The first one provided that the Water Commission should have authority "to grant, or to refuse to grant a permit and to reject any application, *after hearing.*" (Emphasis added; now Wat. Code, §§ 1340-1353.) Section 1d stated the provisions which now form section 1375 of the Water Code. Section 1b established a method of review of an order of the State Water Commission issuing or refusing to issue a permit, by bringing an action in the su-

perior court. In *Mojave River Irr. Dist.* v. *Superior Court*, 202 Cal. 717, 726 [262 P. 724], section 1b was held to be unconstitutional. Despite this decision, the section was reenacted without substantial change as sections 1360 to 1363 of the Water Code and the appellants and the respondents agree that they are unconstitutional.

The cumulative effect of the statutory changes is to create a type of proceeding greatly different from that which was authorized by the legislation considered in the Tulare case. At that time, the commission had no discretion to issue or deny a permit, but, depending upon the availability of unappropriated water and the sufficiency of an application, its duty to grant or to deny a permit was mandatory. Under that procedure, the commission exercised only a supervisorial function in the issuance of permits. (*Tulare Water Co.* v. *State Water Com.*, *supra*, 187 Cal. at 537.) In carrying out its present duty, the department exercises a broad discretion in determining whether the issuance of a permit will best serve the public interest. (Wat. Code, §§ 1253, 1255.) That determination requires an administrative adjudication and, in any case in which the issuance of a permit is protested, it may be made only after a hearing. (Wat. Code, § 1350.) Ample provision is made for notifying anyone who may have an interest in the rights claimed or to be considered upon the hearing of such application. (Wat. Code, §§ 1300-1323.)

Section 1094.5 of the Code of Civil Procedure specifies the procedure to be followed upon inquiry ''into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer. . . .'' The respondents take the position that the procedure required by the Water Code upon an application for a permit to appropriate water comes within the scope of this section.

The appellants argue that the statute can apply only to the agencies enumerated in the Administrative Procedure Act (Gov. Code, tit. 2, div. 3, chaps. 4 and 5), to local boards or agencies or to state-wide administrative agencies which have complied voluntarily with the act. However, although specific provision is made for the use of the writ to review the proceedings of the particular agencies specified by the Legislature (Gov. Code, § 11523), the remedy is not limited to a review of the decisions of those agencies or to agencies having

formally adopted the procedure required of those mentioned in the act. The framers of section 1094.5 intended it to set forth "the procedure by which judicial review can be had by the writ of mandate after a formal adjudicatory decision by *any* administrative agency." (Emphasis added; see Tenth Biennial Report of the Judicial Council of California, Appendix A, p. 45.) The decisive question is whether the agency exercises an adjudicatory function in considering facts presented in an administrative hearing. ■ As noted in *Boren* v. *State Personnel Board*, 37 Cal.2d 634 [234 P.2d 981], a case involving an agency not included within the Administrative Procedure Act but having functions specified by constitutional provisions, "[s]ince the enactment of section 1094.5 of the Code of Civil Procedure, it is no longer open to question that in this state the writ of mandamus is appropriate 'for the purpose of inquiring into the validity of any final administrative order or decision made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer. . . .' " (P. 637.)

The water company and the municipal district assert, however, that the proceedings before the Division of Water Resources are not formally sufficient to allow the review authorized by section 1094.5. They point out that under subdivision (b) of that section, "[a]buse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." In acting upon an application for a permit to appropriate water, it is said, the department takes the matter under submission and then records its determination by an endorsement upon the application without making formal findings of fact or preparing a formal order or decision. The respondents claim that this is not the established procedure. According to them the judicial notice which properly may be taken by this court of the records of the division will show that "every decision after hearing is announced by a formal written order of the State Engineer which is accomplished by an opinion containing a statement of the procedural steps that have been taken in the proceedings and the facts and conclusions upon which the decision and order are based. These are all public records and open to inspection."

■ The general principles with regard to the necessity

of findings of fact by an administrative body were reviewed in *Swars* v. *Council of City of Vallejo,* 33 Cal.2d 867 [206 P.2d 355], where it was pointed out that although such findings "must conform to the statutes governing the particular agency, they need not be stated with the formality required in judicial proceedings." (P. 872.) Their basic purpose is to enable the reviewing court to determine whether they are supported by sufficient evidence or a proper principle and to apprise the parties as to the reason for the administrative action in order that they may decide whether, and upon what grounds, additional proceedings should be initiated.

■ The sufficiency of the administrative findings does not determine the availability of section 1094.5 of the Code of Civil Procedure as a method of reviewing the administrative decision, but is a question to be determined upon a review under that section. If in fact the findings are insufficient to allow a fair review of the decision, the defect may be corrected by a writ of mandate under section 1094.5. (*Cf. English* v. *City of Long Beach,* 35 Cal.2d 155, 158-160 [217 P.2d 22, 18 A.L.R.2d 547].)

Another argument against the availability of a writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure is that the legislative history of the enactments relating to proceedings before the Water Commission and Division of Water Resources demonstrates an intention that this method of review shall not apply. One contention is that such an intention is manifest from the retention and reenactment of the provisions which were held unconstitutional in the Mojave Irrigation District case. ■ However, that action of the Legislature demonstrates only an intention to provide a particular remedy and does not show a purpose to choose between other available remedies in the event the selected one were unconstitutional. Extended to its logical conclusion, the appellants' argument would deny the availability of the particular remedy that they seek and, for that matter, any other remedy to review the department's decision. Such a result would be inconsistent with any reasonable legislative purpose.

The appellants also contend that a distinction should be made between the function of determining whether there is unappropriated water available to an applicant and the right to decide, when such water is available, as to whether the proposed use will best serve the public interest. They concede that since the Tulare case the department has been given a broad discretion in determining the latter issue. But they regard that decision as a holding, not affected by any subsequent

legislation, that the department has no discretion with regard to the former one. On the contrary, they argue, section 1375 of the Water Code, by providing that as a prerequisite to the issuance of a permit "[t]here must be unappropriated water available to supply the applicant," in effect codifies the Tulare decision and makes the fact as to the availability of such water the basis of the department's authority. The appellant's position is that section 1094.5 may be used to review a decision as to whether a permit should issue when there is unappropriated water in a stream, but the availability of such water must be determined de novo in an independent judicial proceeding.

However, in the Tulare case the court said: "If any discretion was vested in the commission, or any matter submitted for judicial consideration, it was to determine whether there was any unappropriated water . . . at that time subject to this proposed appropriation." (187 Cal. at p. 536.) But under the statute there construed, the duty to issue a permit was mandatory if water was available and the applicant had followed the prescribed procedure. The applicant in that situation, it was said, had a statutory right to unappropriated water, and the statute conferred no judicial power upon the commission to conclude that right. Also, the court observed that "it is manifestly impracticable for the Water Commission to authoritatively determine that there is not water in a given stream subject to appropriation. What is unappropriated water is a constantly fluctuating question, depending upon the seasonal flow of the stream, the annual rainfall, the forfeiture of prior appropriations and default in the use of riparian rights. To conclude the rights of would-be appropriators by the extrajudicial and perhaps arbitrary action of a board of water commissioners would be to deprive such applicant of a valuable property right without due process of law." (187 Cal. 537.)

Under the present procedure, the department's determination as to the availability of unappropriated water concludes no *right* to a permit to appropriate water but merely decides a fact upon which the department bases the exercise of its discretion. Necessarily, the department must make that determination as a prerequisite to any exercise of its discretion in the issuance of a permit.

The argument that the existence of unappropriated water is a jurisdictional issue is based upon the apparently mandatory wording of section 1375 of the Water Code, de-

claring "As prerequisite to the issuance of a permit to appropriate water . . . [t]here *must* be unappropriated water available to supply the applicant." (Emphasis added.) But under the same section it is equally mandatory that the application contain all the information prescribed by the Water Code in the form required by the department (subd. (b)); that the intended use be beneficial (subd. (c)); and that all fees be paid (subd. (e)). There appears to be little reason to conclude that the requirement that unappropriated water exist is more "jurisdictional" than any other fact necessary to be established as a condition for obtaining a permit.

The so-called "jurisdictional fact" doctrine originated in *Crowell* v. *Benson,* 285 U.S. 22 [52 S.Ct. 285, 76 L.Ed. 598], which concerned the enforcement of a compensation award made under the Longshoremen's and Harbor Workers' Compensation Act. (Title 33 U.S.C. §§ 901-950.) By the enabling act which is the basis of that statute, compensation may be allowed only to a person whose disability or death results from "an injury occurring upon navigable waters of the United States" where the relationship of master and servant exists. These conditions were declared to be "indispensable to the application of the statute, not only because the Congress has so provided explicitly . . . but also because the power of the Congress to enact the legislation turns upon the existence of those conditions." (P. 55.) Perhaps the court said a determination by the deputy commissioner before whom such a proceeding is conducted might involve constitutional rights which earlier decisions had held require judicial determination in order to satisfy the requirements of due process of law. (*Ohio Valley Water Co.* v. *Ben Avon,* 253 U.S. 287, 289 [40 S.Ct. 527, 64 L.Ed. 908]; *Ng Fung Ho* v. *White,* 259 U.S. 276, 284-285 [42 S.Ct. 492, 66 L.Ed. 938].) It was concluded that no provision of the statute confined a reviewing court to the record before the deputy commissioner. but, instead, an aggrieved party could require a trial de novo.

*Crowell* v. *Benson* has never been overruled, but both the vitality of the rule stated by it and the authority of the cases upon which that rule rests have been greatly diminished by subsequent decisions. (See Davis, Administrative Law (1951), § 255, pp. 918-922.) The rule generally has been limited to cases arising under the specific act construed in that decision. (See Schwartz, *Does the Ghost of Crowell* v. *Benson Still Walk?* 98 Univ. of Pa.L.Rev. 163 (1949).)

It is questionable whether California has accepted the rule of *Crowell* v. *Benson*. That case was cited by this court as authority for the statement that "if the courts in reviewing the administrative boards' actions do not exercise an independent judgment on the facts as well as on the law, then the party adversely affected, at least where constitutional rights are involved, has been deprived of due process." (*Drummey* v. *State Board of Funeral Directors & Embalmers*, 13 Cal.2d 75, 84 [87 P.2d 848].) But no distinction was made between "jurisdictional facts" and other factual determinations made by an administrative agency, the court holding that, where a state-wide agency not created by the Constitution is concerned, an aggrieved party is entitled to a trial de novo on all issues. And in the *Laisne* case the weakness of the rule of *Crowell* v. *Benson* was expressly recognized. (*Laisne* v. *State Board of Optometry*, 19 Cal.2d 831, 845-846 [123 P.2d 457].)

Section 1094.5 is a codification of the procedure devised for reviewing the adjudications of state-wide administrative agencies in the series of cases beginning with *Standard Oil Co.* v. *State Board of Equalization*, 6 Cal.2d 557 [59 P.2d 119], which arose before the enactment of the Administrative Procedure Act. Those decisions held that such a review required a trial de novo in the superior court (*Laisne* v. *State Board of Optometry*, 19 Cal.2d 831, 845 [123 P.2d 457]) or a procedure which the court concluded was substantially the equivalent of such a trial. (*Cf. Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304].) A majority of the court has held that the scope of review under the new statute is the same as that specified in those cases. (*Southern Cal. Jockey Club, Inc.* v. *California Horse Racing Board*, 36 Cal.2d 167, 173-174 [223 P.2d 1]; cf. *Moran* v. *Board of Medical Examiners*, 32 Cal.2d 301 [196 P.2d 20].) That conclusion makes it unnecessary to distinguish between so-called jurisdictional facts and other facts upon which administrative adjudication depends when, as here, the review is of a determination of a state-wide administrative agency.

The suggested "practical" reasons advanced for requiring the issue of the availability of unappropriated water to be decided in an independent judicial proceeding, rather than after a hearing before the department, are unconvincing. The appellants suggest that, in such a proceeding, instituted according to the traditional uses of the writ of mandate, a judicial determination of that issue could be made simply by

comparing the aggregate of existing rights with estimated supplies. By that means, it is said, the issue could be determined and the expense of numerous hearings upon applications for permits before the department avoided. The basis for this position is the desirability of protecting the holders of prior rights against the danger of subsequent appropriative claims beyond available supplies. As the appellants state the problem, the state should not issue "more hunting licenses than there is game to satisfy the hunters."

As stated in the Tulare case, however, "[w]hat is unappropriated water is a constantly fluctuating question, depending upon the seasonal flow of the stream, the annual rainfall, the forfeiture of prior appropriations and default in the use of riparian rights." (187 Cal. at 537.) A judicial determination as to existing appropriative and riparian rights rests upon then present uses which may be quite different at a later time, and a determination as to the future availability of water necessarily can be only an estimate. A permit itself confers no appropriative rights but fixes the priority of its recipient over subsequent appropriators (Wat. Code, §§ 1450-1456); it expressly provides that its issuance is subject to vested rights. If the department erroneously concludes that unappropriated water is available to supply an applicant when there is no reasonable expectation of such a supply, the error may be corrected upon a review of the determination. But a holding that such a danger is so imminent as to justify an independent judicial proceeding to determine the availability of unappropriated water before the department considers an application, would deprive the administrative proceeding of all of its proper functions in the issuance of a permit. No such danger will be presumed.

The proper remedy for reviewing the issuance of a permit despite protest upon the ground of the unavailability of unappropriated water is by a writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure. The respondents correctly contend that the petition for mandate does not state a cause of action under that section. "[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) The petition for mandate does not allege that the appellants have in any manner participated in the proceeding upon the application, although

in their brief they state that they appeared and objected to the issuance of a permit.

The respondents also assert that the petition is defective in that it does not allege a beneficial interest of the petitioners. However, statutory authority allows them to present a protest to the application before the department (Wat. Code, §§ 1330, 1331; and, if upon amendment to their petition they show their participation as interested parties in that proceeding, they may establish as well their interest in a judicial proceeding to review the department's determination. (*Bodinson Mfg. Co.* v. *California Emp. Com.*, 17 Cal.2d 321, 330 [109 P.2d 935].)

Generally, it is held to be an abuse of discretion to sustain without leave to amend a demurrer to an original complaint, unless the complaint shows on its face that it is incapable of amendment. (*King* v. *Mortimer*, 83 Cal.App.2d 153, 158 [188 P.2d 502].) It does not appear that the present petition could not be amended to state a cause of action.

The judgment is reversed with directions to the trial court to permit the appellants to amend their petition, if they be so advised.

Shenk, Acting C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and Bray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.