Filed 9/20/13 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DIANNE E. YOUNG et al., | C068559 |
| Plaintiffs and Respondents, | (Super. Ct. No. 39201100259191CUWMSTK) |
| v. | |
| STATE WATER RESOURCES CONTROL BOARD, | ORDER MODIFYING OPINION |
| Defendant and Appellant; | [NO CHANGE IN JUDGMENT] |
| WOODS IRRIGATION COMPANY et al., | |
| Real Parties in Interest and Respondents; | |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, | |
| Real Party in Interest and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on September 4, 2013, be modified as follows:

1.      On page 6, the first paragraph under the subheading "Mootness," beginning with "The Water Board raises," is modified to read as follows:

The San Luis & Delta-Mendota Water Authority raises the threshold question of mootness. It contends that when the Water Board granted the Customers' petition for reconsideration and issued a new order, this appeal became moot. In reply, the San Luis & Delta-Mendota Water Authority withdraws its mootness argument. Regardless, this appeal is not moot for two simple reasons.

2. On page 6, the last sentence of the last paragraph under the subheading "Mootness," beginning with "The Water Board's position," is deleted so that the paragraph read as follows:

Second, the jurisdictional question posed is of continuing public interest and importance. Therefore, even if the reconsideration order had reversed the Water Board's assertion of jurisdiction, we would invoke the public interest exception to mootness.

There is no change in the judgment.

BY THE COURT:


                    RAYE                  , P.J.



                    BLEASE              , J.



_____

2

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DIANNE E. YOUNG et al., | C068559 |
| Plaintiffs and Respondents, | (Super. Ct. No. 39201100259191CUWMSTK) |
| v. | |
| STATE WATER RESOURCES CONTROL BOARD, | |
| Defendant and Appellant; | |
| WOODS IRRIGATION COMPANY et al., | |
| Real Parties in Interest and Respondents; | |
| SAN LUIS & DELTA-MENDOTA WATER AUTHORITY, | |
| Real Party in Interest and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Lesley D. Holland, Judge.  Reversed.

1

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Senior Assistant Attorney General, Sara Russell, Tracy L. Winsor and Matthew G. Bullock, Deputy Attorneys General, for Defendant and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Daniel J. O'Hanlon, Rebecca R. Akroyd, Elizabeth L. Leeper; and Jon D. Rubin for Real Party in Interest and Appellant.

Herum Crabtree, Natalie M. Weber; Spaletta Law and Jennifer L. Spaletta for Plaintiffs and Respondents.

Law Offices of John Herrick and John Herrick for Real Party in Interest and Respondent Woods Irrigation Company.

Harris, Perisho & Ruiz and S. Dean Ruiz for Real Parties in Interest and Respondents Central Delta Water Agency and South Delta Water Agency.

Neumiller & Beardslee, DeeAnne M. Gillick and Elizabeth J. Morrell for Real Parties in Interest and Respondents San Joaquin County and San Joaquin County Flood Control & Water District.


Raising an important issue of first impression, customers[1] of Woods Irrigation Company (Woods), a water distribution corporation, contend the State Water Resources Control Board (Water Board) lacks jurisdiction to issue a cease-and-desist order (CDO) for an illegal diversion of water if the diverter claims riparian or pre-1914 appropriative rights. The Customers argue the Water Board must first file a civil lawsuit to adjudicate the diverter's water rights before it can execute its statutory mandate to "take vigorous action . . . to prevent the unlawful diversion of water." (Wat. Code, § 1825.) The trial court granted the Customers' petition for a writ of mandamus limiting the Water Board's jurisdiction and awarding attorney fees under the private attorney general doctrine. (Code Civ. Proc., § 1021.5.)

---

[1] The customers include plaintiffs and respondents Dianne E. Young; Ronald and Janet Del Cardo; RDC Farms, Inc.; Eddie Vierra Farms, LLC; and Warren P. Schmidt, trustee of the Schmidt Family Revocable Trust, hereafter Customers.

The Water Board granted the Customers' request for reconsideration, thereby reopening the hearing on Woods' diversions to allow the Customers the opportunity to submit evidence and cross-examine witnesses. We conclude the reconsideration order moots the due process issue, but the jurisdictional question remains of paramount public interest. We further conclude that pursuant to Water Code section 1831, the Water Board can make a preliminary determination for purposes of enforcement whether the diverter has either the riparian or pre-1914 appropriative rights it claims without filing a lawsuit. The diverter or interested parties can thereafter seek judicial review if warranted. We therefore reverse the judgment, including the award of attorney fees.

## LEGAL AND FACTUAL CONTEXT[2]

The resolution of this appeal turns on the meaning of Water Code section 1831, which provides in relevant part:

"(a) When the board determines that any person is violating, or threatening to violate, any requirement described in subdivision (d), the board may issue an order to that person to cease and desist from that violation. [¶] . . . [¶]

"(d) The board may issue a cease and desist order in response to a violation or threatened violation of any of the following:

"(1) The prohibition set forth in Section 1052 against the unauthorized diversion or use of water subject to this division.

---

[2] The parties have made separate requests for judicial notice, which we determine as follows: Defendant Water Board's September 28, 2012, request for judicial notice of Water Board order No. WR-2012-0012 is granted. The request for judicial notice filed by plaintiffs Diane E. Young et al. on December 11, 2012, is granted as to exhibits B-1 through B-4 only and is denied as to the remainder of the exhibits attached to that request. The requests for judicial notice filed by real party in interest San Luis & Delta-Mendota Water Authority on September 19, 2012, and by defendant Water Board on January 9, 2013, are denied.

3

"(2) Any term or condition of a permit, license, certification, or registration issued under this division.

"(3) Any decision or order of the board issued under this part, Section 275, or Article 7 (commencing with Section 13550) of Chapter 7 of Division 7, in which decision or order the person to whom the cease and desist order will be issued, or a predecessor in interest to that person, was named as a party directly affected by the decision or order.

"(e) This article shall not authorize the board to regulate in any manner, the diversion or use of water not otherwise subject to regulation of the board under this part."

On February 18, 2009, the Water Board requested Woods to complete a statement of diversion and use of water from the Middle River in the Sacramento-San Joaquin River Delta and to provide evidence to verify the basis of the asserted water right upon which it was diverting water. Following an investigation, the Water Board issued a draft CDO against Woods for the alleged unauthorized diversion of water.

On January 10, 2010, Woods requested a hearing. Four months later, the Customers, owners of land on Roberts Island, sought to intervene in the hearing and requested a continuance. The hearing officer declined to continue the CDO hearing or to allow late intervention. He wrote: "The Woods CDO hearing will not bind non-parties to the hearing. Whether landowners who receive water through Woods would be otherwise impacted by the proceeding will depend upon the terms of an order either issuing or not issuing a CDO against Woods. The Hearing Officers may, if appropriate or necessary, hold open the hearing to allow for submission of additional evidence or to allow for participation of additional parties."

At the hearing, Woods provided evidence supporting riparian or pre-1914 appropriative water rights to divert no more than 77.7 cubic feet per second (cfs). After several revisions, the Board voted in February 2011 to approve the draft CDO. Woods was ordered to submit monthly diversion records annually, and before diverting any water at a rate in excess of 77.7 cfs, it was required to submit additional evidence

4

regarding water rights and other information to the deputy director of the Water Board. The CDO allows Woods to seek a diversion rate increase "based on additional evidence regarding the water rights of landowners not addressed in this order." The order expressly provides: "Notwithstanding paragraphs 3 and 4, above, if a water user or water right holder within the Woods service area provides information, and such information demonstrates an additional basis of right for deliveries of water acceptable to the Deputy Director, after issuance of this order, Woods may deliver water to the user upon the Deputy Director's approval."

The Customers sought both administrative and judicial review. To obtain administrative review, the Customers petitioned the Water Board for reconsideration of the order, and to obtain judicial review, the Customers petitioned for a writ of mandate, claiming that the Water Board does not have jurisdiction to issue a CDO against diverters who claim riparian or pre-1914 appropriative rights and that the Water Board violated their right to due process. Before the Water Board acted on the request for reconsideration, the superior court issued a peremptory writ of mandate ordering the Water Board to set aside the CDO, Water Board order No. WR 2011-0005. The Customers presented no evidence in the mandamus proceedings regarding the extent of the riparian and pre-1914 appropriative rights claimed by Woods and the Customers, and the court made no findings on this issue.

Thereafter the Water Board partially granted the Customers' petition for reconsideration and rescinded the due process findings adopted by order No. WR 2011-0005. The order also concludes the Water Board has jurisdiction under Water Code section 1831 to determine the extent and validity of the Customer's riparian and pre-1914 water rights. Any additional evidence produced would "be used for the purpose of considering whether to adopt an order revising Order WR 2011-0005." The Customers filed a second petition for a writ of mandate to set aside the reconsideration order, but the

5

parties thereafter stipulated to a stay of the writ proceedings challenging the order pending resolution of the present appeal.

DISCUSSION

I

**Mootness**

The Water Board raises the threshold question of mootness. The Water Board contends that when it granted the Customers' petition for reconsideration and issued a new order, this appeal became moot. We reject the Water Board's argument for two simple reasons.

First, the reconsideration order is narrow in scope. It did not reverse the Water Board's resolution of the fundamental question raised in this appeal—whether the Water Board has jurisdiction to issue a CDO in an enforcement action when the diverter asserts riparian or pre-1914 rights. Rather, in rescinding only three pages of the 63-page order, it merely allows the Customers to participate in the CDO proceedings against Woods. While the due process challenge was a narrow one pertaining to the individual rights of the Customers to participate, the broad jurisdictional question has major implications for the Water Board's ability to prevent the unlawful diversion of water. Thus the issues presented on appeal are not moot.

Second, the jurisdictional question posed is of continuing public interest and importance. Therefore, even if the reconsideration order had reversed the Water Board's assertion of jurisdiction, we would invoke the public interest exception to mootness. The Water Board's position on mootness is at odds with its assertion that the appeal raises important issues that would have far reaching effects on California water law.

II

**Jurisdiction**

The Customers contend that the Water Code does not provide the authority to the Water Board to adjudicate the validity, the extent, or the forfeiture of riparian or pre-1914

6

appropriative rights. They argue the Water Board had no jurisdiction to do so before the enactment of Water Code section 1831, and section 1831, subdivision (e) exempts "water not otherwise subject to regulation of the board under this part."

We turn to the plain language of the statutory scheme enacted by the Legislature to manage the limited water resources in California. Resolution of the straightforward statutory question before us does not require a long narrative on the complicated evolution of water rights in this state. Suffice it to say, 1914 is the pivotal year when the Legislature established a permitting system intended to vest in the Water Board or its predecessor state entities "expansive powers to safeguard the scarce water resources of the state." (*People v. Shirokow* (1980) 26 Cal.3d 301, 309.)

No one disputes that the Water Board does not have jurisdiction to regulate riparian and pre-1914 appropriative rights. (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 429.) Nevertheless, the Water Board "does have authority to prevent illegal diversions and to prevent waste or unreasonable use of water, regardless of the basis under which the right is held." (*Ibid.*) The question thus posed is whether the Water Code gives the Water Board jurisdiction in enforcement proceedings to determine initially whether a diverter has either the riparian or pre-1914 appropriative rights it claims.

Several statutes provide the answer. The Water Board has permitting authority over all water not otherwise properly diverted or used under a riparian or pre-1914 right. Water Code section 1201 states: "All water flowing in any natural channel, excepting so far as it has been or is being applied to useful and beneficial purposes upon, or in so far as it is or may be reasonably needed for useful and beneficial purposes upon lands riparian thereto, or otherwise appropriated, is hereby declared to be public water of the State and subject to appropriation in accordance with the provisions of this code." Unappropriated water includes water that has never been appropriated (Wat. Code, § 1202, subd. (a)), water subject to a pre-1914 right but that was not perfected by putting the water to

7

beneficial use with due diligence (Wat. Code, § 1202, subd. (b), and water for which a right had been perfected by putting the water to use under a pre-1914 right but where the use later ceased (Wat. Code, § 1240).

In *Temescal Water Co. v. Dept. of Public Works* (1955) 44 Cal.2d 90 (*Temescal*), a water company and water district raised essentially the same jurisdictional argument the Customers raise here:  that is, that a court, and not the Water Board, must determine the threshold question, the answer to which will determine whether the Water Board has jurisdiction or not.  In *Temescal*, that question was whether there was unappropriated water available as a prerequisite to the Water Board's jurisdiction to issue a permit.  The water company and water district argued that the availability of water must be determined de novo in an independent judicial proceeding.  Similarly, the Customers insist that the Water Board must initiate civil proceedings to have a court determine whether the diverter has either riparian or pre-1914 appropriative rights.  The Customers, like the water company and water district in *Temescal*, reject the notion that their remedy is to seek review of the Water Board's determination in mandamus proceedings under section 1094.5 of the Code of Civil Procedure.

The California Supreme Court rejected a cribbed reading of the Water Board's authority under the statutory scheme.  The court held that the Water Board, and not a court, was authorized to make the preliminary determination.  The court explained: "Under the present procedure, the department's determination as to the availability of unappropriated water concludes no *right* to a permit to appropriate water but merely decides a fact upon which the department bases the exercise of its discretion . . . in the issuance of a permit.  [¶]  . . . There appears to be little reason to conclude that the requirement that unappropriated water exist is more 'jurisdictional' than any other fact necessary to be established as a condition for obtaining a permit." (*Temescal*, *supra*, 44 Cal.2d at pp. 103-104.)

8

The Legislature has granted the Water Board power to investigate water use and to ascertain whether water is being diverted other than as authorized in the code. Water Code section 1052 states, in part: "The diversion or use of water subject to this division other than as authorized in this division is a trespass . . . [¶] . . . [¶] [and the Water Board] shall institute in the superior court in and for any county wherein the diversion or use is threatened, is occurring, or has occurred appropriate action" to have such trespass enjoined. (Wat. Code, § 1052, subds. (a), (c).)

In *Meridian, Ltd. v. San Francisco* (1939) 13 Cal.2d 424, the California Supreme Court also held that the Water Board had the power to investigate whether the water use in streams, including the use of water "made under appropriations or attempted appropriations acquired or asserted prior to [1914]," is in conformity with the water appropriation laws of the state. (*Meridian*, at p. 450.) While it is true that both *Temescal* and *Meridian* were decided decades before the Legislature expanded the Water Board's enforcement authority in Water Code section 1831, the Supreme Court has consistently held that the Water Board has the power or authority to make the threshold determinations necessary to execute its responsibility to regulate water in the state of California.

These statutes and cases provide the context in which the Legislature enacted Water Code section 1831, quoted at length at the beginning of our opinion. We need not turn to any of the reports or other indicia of legislative intent to construe the plain language of the statute. The preamble to section 1831 resolves the jurisdictional question. It states: "When the *board determines* that any person is violating, or threatening to violate, any requirement described in subdivision (d), the board may issue an order to that person to cease and desist from that violation." (Wat. Code, § 1831, subd. (a), italics added.)

The Legislature expressly vests authority in the Water Board to determine if any person is unlawfully diverting water; to determine whether the diversion and use of water

9

is unauthorized, it is necessary to determine whether the diversion and use that the diverter claims is authorized by riparian or pre-1914 appropriative rights. The Customers' argument that the Water Board lacks jurisdiction to adjudicate claims of riparian or pre-1914 appropriative rights is flawed because it begs the question central to the appeal, namely, whether a given diversion claimed to be authorized is in fact authorized by a valid riparian or pre-1914 appropriative right. If it is not, the diversion is unauthorized and subject to enforcement pursuant to Water Code sections 1052 and 1831, subdivision (d)(1). As the Water Board aptly concluded in its order granting reconsideration, "Put simply, the claim that a diversion is authorized under riparian or pre-1914 right is no different from any other argument that there has been no unauthorized diversion; the argument does not deprive the State Water Board of the authority to determine whether an unauthorized diversion has in fact occurred or is threatened."

The Customers insist that Water Code section 1831, subdivision (e) trumps section 1831, subdivision (d)(1) and Water Code section 1052. They argue that section 1831, subdivision (e) contracts rather than expands the jurisdiction of the Water Board. Section 1831, subdivision (e) provides: "This article shall not authorize the board to regulate in any manner, the diversion or use of water not otherwise subject to regulation of the board under this part." Since riparian and pre-1914 appropriative water rights are not subject to regulation by the Water Board, the Customers contend the Water Board is without jurisdiction to issue a CDO if the diverter asserts riparian or pre-1914 appropriative rights. In their view, the diverter divests the Water Board of jurisdiction simply by alleging riparian or pre-1914 appropriative rights.

We disagree. The provisions of part 2 of division 2 of the Water Code referred to in Water Code section 1831, subdivision (e) include the authority to regulate the diversion and use of unappropriated water, including water claimed under pre-1914 appropriative rights but never perfected, and rights perfected under a pre-1914 right but

10

lost through nonuse. (Wat. Code, §§ 1201, 1202, subd. (b), 1225.) These provisions also include the authority to regulate water claimed under a riparian right but either not covered by an existing riparian right or water being diverted in excess of a valid riparian right. Thus, issuing a CDO to enjoin unauthorized diversions does not violate section 1831, subdivision (d) because subdivision (e) does not prohibit the Water Board from exercising its authority in subdivision (d)(1) over unauthorized diversions.

### III

#### Private Attorney General Fees

Reversing its tentative ruling denying an award of attorney fees, the trial court awarded fees to the Customers pursuant to Code of Civil Procedure section 1021.5. That section allows an award of private attorney general fees "in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, [and] (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . . ."

We agree with the Customers that the jurisdictional question was not mooted by the Water Board's order granting reconsideration because that order did not reverse the Water Board's position that it had jurisdiction in an enforcement proceeding to make the threshold determination if the diverted water was unauthorized and the issue was of continuing public interest. Because we conclude the statutes plainly allow the Water Board to make that determination, the Customers have lost on appeal and the attorney fee award must be reversed.

The Water Board did not, however, challenge the trial court's finding that the Customers had been denied due process in the administrative proceedings. In the parallel administrative proceedings, the Water Board granted the Customers' petition for reconsideration and thereafter reversed its position on the due process issue by allowing the Customers to participate in the proceedings. The only question is whether the

11

Customers were entitled to attorney fees pursuant to Code of Civil Procedure section 1021.5 because they prevailed in the trial court on their due process claim.

We see no evidence in the record before us that the Customers' ability to participate in the proceedings confers any benefit on the public generally. As farmers and landowners they seek to benefit financially from securing additional and steady water supplies. It was the jurisdictional question that presented an issue of ongoing public importance, and if they had prevailed on that issue, there might have been grounds for an award of fees. But given the personal financial interests of the Customers in prevailing on their due process claim, a claim that was recognized by the Water Board and not appealed, we must reverse the award of attorney fees.

**DISPOSITION**

The judgment is reversed, including the award of attorney fees.

          RAYE        , P. J.

We concur:

     BLEASE    , J.

     BUTZ      , J.