Filed 9/29/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA WATER CURTAILMENT CASES. | H047270<br>(Santa Clara County<br> Super. Ct. No. 1-15-CV285182;<br> JCCP No. 4838)<br><br>ORDER MODIFYING OPINION<br>AND DENYING PETITION FOR<br>REHEARING AND REQUEST FOR<br>JUDICIAL NOTICE<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on September 12, 2022, be modified as follows:

On page 26, in the second sentence in the last incomplete paragraph replace "authority" with "authority under section 1052(a)".

On page 26, in the fifth sentence of the last incomplete paragraph, replace "nothing in division 2" with "no similar provision in division 2".

On page 28, in the second full paragraph, add a footnote at the end of the first sentence that reads: "For purposes of the phase 1 trial and in this appeal, the Board has not challenged the validity of respondents' water rights. We have therefore assumed the validity of respondents' water rights in deciding this appeal." Renumber all subsequent footnotes.

On page 29, in the first sentence of the last incomplete paragraph, replace "has long had the authority" with "had the authority in 2015".

On pages 29 to 30, in the last incomplete paragraph on page 29, in the citation that continues on to page 30, replace "Stats. 1991, ch. 12, § 3" with "Stats. 2014, ch. 3, § 10; see also Stats. 1991 Ex. Sess., ch. 12, § 3".

On page 30, in the second sentence in the last paragraph, replace "held post-1914 appropriative rights," with "claimed to manage riparian rights and pre-1914 appropriative rights,".

There is no change in the judgment.  The petition for rehearing is denied.

The request for judicial notice is denied.  The materials that are the subject of the request appear in the record on appeal.

_____
DANNER, J.

_____
GREENWOOD, P.J.

_____
WILSON, J.

2

Santa Clara County Superior Court No.: 1-15-CV285182, JCCP No. 4838

Trial Judge: Hon. Brian Walsh

Counsel for Defendant/Appellant, State Water Resources Control Board: Rob Bonta, Attorney General, Robert W. Byrne, Assistant Attorney General, Tracy L. Winsor, Allison Goldsmith, Kate D. Fritz, Matthew G. Bullock, Deputy Attorneys General

Counsel for Intervenor/Appellant, Department of Water Resources:  Rob Bonta, Attorney General, Robert W. Byrne, Assistant Attorney General, Laura J. Zuckerman, Russell B. Hildreth and Carolyn Nelson Rowan, Deputy Attorneys General

Counsel for Amicus Curiae on behalf of Defendant/Appellant, State Water Resources Control Board: Environmental Law Clinic, Mills Legal Clinic at Stanford Law School, Deborah A. Sivas, Matthew J. Sanders and Stephanie L. Safdi

Counsel for Plaintiff/Respondent, Byron-Bethany Irrigation District: Somach Simmons & Dunn, Michael E Vergara, Theresa C. Barfield and Alyson E. Ackerman

Counsel for Plaintiff/Respondent, Central Delta Water Agency: Nomellini Grilli & McDaniel, Dante John Nomellini, Sr., Dante John Nomellini, Jr., Daniel Allen McDaniel; Spaletta Law and Jennifer L. Spaletta

Counsel for Plaintiffs/Respondents,
Patterson Irrigation District and Banta Carbona Irrigation District:
Herum\Crabtree\Suntag, Steven A. Herum, Jeanne M. Zolezzi and Lilliana Freeman

Counsel for Plaintiffs/Respondents, San Joaquin Tributaries Authority and South San Joaquin Irrigation District: Paris, Kincaid & Wasiewski, Valerie C. Kincaid and Timothy J. Wasiewski

Counsel for Plaintiff/Respondent, South Delta Water Agency: Mohan, Harris, Ruiz, Wortmann, Perisho & Rubino, S. Dean Ruiz; and John Henry Herrick

Counsel for Plaintiff/Respondent, Oakdale Irrigation District: Tim O'Laughlin


**H047270**
***In re California Water Curtailment Cases***

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| CALIFORNIA WATER CURTAILMENT CASES. | H047270<br>(Santa Clara County<br> Super. Ct. No. 1-15-CV285182;<br> JCCP No. 4838) |


We decide an appeal arising from the state's efforts in 2015 to curtail water use in the Sacramento-San Joaquin River Delta[1] during a severe, multi-year drought.

Appellant State Water Resources Control Board (the Board) appeals from a judgment issuing preemptory writs of mandate. The Board's appeal turns on whether it has the authority to curtail the diversion or use of water by holders of valid pre-1914 appropriative water rights—a group with distinctive rights rooted in the history of California water law[2]—under Water Code section 1052, subdivision (a)[3] (hereafter section 1052(a)) on the sole ground that there is insufficient water to service their priorities of right due to drought conditions. The trial court concluded that section

---

[1] We use "the Sacramento-San Joaquin River Delta" and "the Delta" interchangeably to refer to the Sacramento-San Joaquin River and Delta watersheds.

[2] We describe the significance of pre-1914 appropriative water rights and other fundamental principles of California water law in more detail, *post*.

[3] Unspecified statutory references are to the Water Code.

1052(a) did not authorize the Board to do so and granted relief to respondents,[4] who hold pre-1914 appropriative water rights.

Section 1052(a), which appears in division 2 of the Water Code, provides: "The diversion or use of water subject to this division other than as authorized in this division is a trespass." (§ 1052(a).) This appeal requires us to construe the language "subject to this division other than as authorized in this division." The parties agree that this statute permits the Board to curtail diversions or uses of water that fall within this definition, but they disagree about its application to pre-1914 appropriative water rights.

The Board asserts that this language can, under certain conditions, extend to diversions by all or certain classes of pre-1914 appropriators. In particular, the Board argues section 1052(a) granted it authority in 2015 to curtail respondents' diversion or use of water based on its projection that there would be insufficient water to satisfy a group of pre-1914 water right holders in the Delta. Respondents counter that "subject to this division other than as authorized in this division" excludes the diversion or use of water within the scope of a valid pre-1914 appropriative right, even during times of limited water supply.

We agree with the Board that section 1052(a) provides the Board authority to enjoin a diversion or use of water that falls outside the scope of a right held by a pre-1914 appropriative right holder. But we reject its contention that the statute endows the Board with jurisdiction to curtail diversions based on alleged violations of priorities of right among valid pre-1914 right holders if it concludes that the water supply is insufficient to

---

[4] Respondents are Banta-Carbona Irrigation District (BCID), Byron-Bethany Irrigation District (BBID), Patterson Irrigation District, West Side Irrigation District (WSID), Central Delta Water Agency, South Delta Water Agency, San Joaquin Tributaries Authority, South San Joaquin Irrigation District, and Oakdale Irrigation District, which we will refer to collectively as respondents. In September 2020, after the trial court's judgment, WSID and BBID consolidated into a single entity called BBID. We subsequently granted BBID's request to substitute itself for WSID.

2

satisfy their entitlements. As the latter theory was the sole basis for the Board's curtailment notices at issue here, we affirm the trial court's judgment against the Board.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After "one of the driest years in recorded state history," Governor Brown proclaimed a state of emergency in January 2014 due to "severe drought conditions." In May 2014, the Board notified water right holders in the Sacramento and San Joaquin River watersheds that the Board had "determined that the existing water supply . . . is insufficient to meet the needs of all water rights holders." With respect to pre-1914 appropriative and riparian water right holders, the Board asked them to "conserve water" and informed them that it might "curtail some pre-1914 and riparian water rights in the near future."[5]

In January 2015, the Board informed all water right holders in California that, unless there were significant improvement, it would be notifying those "in critically dry watersheds of the requirement to limit or stop diversions of water under their water right, based on their priority." It warned that "[s]ome more senior riparian and pre-1914 water right holders can also receive a notice to stop diverting water based on their priority or limitation of natural flow."

In February 2015, the Board issued an "informational order," to take effect on March 1, 2015. This order stated that the Board "has information that indicates there may be unlawful diversions of stored water by riparians or pre-1914 appropriative water right claimants in the Sacramento and San Joaquin River watershed and Delta." The

---

[5] "Riparian rights are special rights to make use of water in a waterway adjoining the owner's property. Overlying rights are special rights to use groundwater under the owner's property." (*City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1237, fn. 7 (*City of Barstow*).) Appropriative rights involve "the diversion of water" and " 'any taking of water for other than riparian or overlying uses.' " (*People v. Shirokow* (1980) 26 Cal.3d 301, 307 (*Shirokow*).) Neither riparian nor overlying rights are at issue in this appeal.

Board ordered "holders claiming riparian and pre-1914 rights in the Sacramento and San Joaquin River Watershed and Delta" to provide information to the Board about their diversions and the basis for their rights and to continue to report their diversions to the Board each month. The Board explained that this information was needed "[t]o determine whether unauthorized diversions have occurred." The order noted: "Failure to comply with this Order subjects the party to enforcement action."

On April 1, 2015, the Governor issued another executive order continuing the State of Emergency due to the "severe drought conditions" in the state caused by four years of drought. The Governor ordered the Board to take various actions, including requiring "frequent reporting of water diversion and use by water right holders, conduct[ing] inspections to determine whether illegal diversions or wasteful and unreasonable use of water are occurring, and bring[ing] enforcement actions against illegal diverters and those engaging in the wasteful and unreasonable use of water."

The following day, the Board sent notices to all water right holders informing them that "[i]f dry conditions persist through the spring, it is anticipated that all holders of post-1914 and many holders of pre-1914 water rights in certain watersheds will receive curtailment notices soon." The Board said it would soon post "estimate[s of] the timing of curtailments for the various classes of water right holders."

Three weeks later, the Board sent out another set of notices after it "determined that the existing water supply in the San Joaquin River watershed is insufficient to meet the needs of all water rights holders." These notices told "all holders of post-1914 appropriative water rights within the San Joaquin River watershed . . . to immediately stop diverting under their post-1914 water rights." (Underlining omitted.) The notices also "advised that, if you continue to divert under a claim of pre-1914 right, most or all pre-1914 rights in the San Joaquin River watershed are likely to be curtailed later this year due to the extreme dry conditions." One week later, the Board sent nearly identical notices to water right holders within the Sacramento River watershed.

4

On June 12, 2015, the Board sent out another set of notices based on its updated water supply projections telling those with "pre-1914 claims of right, with a priority date of 1903 and later for the Sacramento-San Joaquin watersheds and the Delta, that, due to ongoing drought conditions, there is insufficient water in the system to service their claims of right." The notices informed them "of the need to immediately stop diverting water with the exceptions discussed below . . . until water conditions improve." (Underlining omitted.) They stated: "Holders of pre-1914 water right claims with priority dates equal to or later than 1903 are required to document receipt of this notice . . . [and] confirm[] your cessation of diversion under the specific pre-1914 claim of right."[6]

Under the heading "Potential Enforcement," the notices informed recipients that "[i]f the State Water Board finds following an adjudicative proceeding that a person or entity has diverted or used water [] unlawfully, the State Water Board may assess penalties of $1,000 per day of violation and $2,500 for each acre-foot diverted or used in excess of a valid water right. (See Water Code, §§ 1052, 1055.) Additionally, if the State Water Board issues a Cease and Desist Order against an unauthorized diversion, violation of any such order can result in a fine of $10,000 per day. (See Water Code, §§ 1831, 1845.)"

On June 16, 2015, the Board sent out a "clarification" to those who claimed both a pre-1914 appropriative water right and a riparian water right. It stated riparian rights would not be curtailed but "as of June 12, 2015, there is insufficient water in the system to meet the needs served by your pre-1914 [appropriative] right."

---

[6] On June 26, 2015, the Board also sent curtailment notices to Upper San Joaquin River watershed diverters. Those notices do not appear to be at issue in this appeal.

Shortly thereafter, respondents filed mandate actions challenging on due process and jurisdictional grounds the Board's curtailment notices.[7] Respondents asserted that the Board had violated their due process rights by issuing the curtailment notices without providing them with an opportunity to be heard. They also contended that the Board had exceeded its jurisdiction because it "lacks authority to regulate pre-1914 appropriative water rights."

Respondents sought a temporary restraining order (TRO) staying the Board's May and June 2015 notices, which was heard on July 8, 2015, by the Sacramento County Superior Court. At the TRO hearing, the Board argued that respondents were not entitled to due process before the issuance of the curtailment notices but would be entitled to due process before any enforcement action under section 1052 or section 1831. Respondents argued that the notices were coercive and requested rescission of language in the notices requiring them to stop diverting.

The Sacramento County Superior Court (whose order is not directly at issue in this appeal) agreed with respondents. It found that the coercive language in the June 2015 notices, requiring respondents to stop diverting and to certify that they had stopped diverting, was improper without a pre-deprivation hearing. The court ordered the language deleted from the notices. It found that the May and June curtailment notices violated respondents' due process rights. The court ordered the Board "to show cause as to why a preliminary injunction should not issue requiring the Board to issue a revised letter/notice that is informational in nature."

On July 15, 2015, the Board issued a "partial rescission" and "clarification" of the May and June notices. The July 15 notice informed respondents that the Board was "rescind[ing] the 'curtailment' portions of the unavailability notices you received. To the extent that [those] notices . . . contain language that may be construed as an order

---

[7] The actions were ultimately coordinated in the Santa Clara County Superior Court.

6

requiring you to stop diversions under your affected water right, that language is hereby rescinded."

In the July 15 partial rescission notice, the Board stated "information available to the State Water Board continues to indicate that there is insufficient water available for the categories of junior water users identified in the State Water Board's prior correspondence, identified above. . . . [¶] Diversion is always subject to water availability limitations, and diversions under your affected water right may be subject to enforcement should the State Water Board find such diversions are or were unauthorized. The State Water Board is continuing its drought-year inspections to determine whether diverters are using water to which they are not entitled. [¶] . . . Those who are found to be diverting water beyond what is legally available to them may be subject to administrative penalties, cease and desist orders, or prosecution in court."

At a July 30, 2015 hearing, the Sacramento County Superior Court found that the July 2015 "partial rescission" complied with its order and rejected respondents' claim that there continued to be a "constitutional infirmity" in the Board's notices. The curtailment notices were later rescinded, and the Board notified water right holders that water was available for diversion.[8]

Before the notices were rescinded, the Board brought enforcement proceedings against BBID and WSID alleging unauthorized diversions. In 2016, the Board dismissed those actions after an administrative hearing demonstrated that the prosecution could not satisfy its burden of proof.

---

[8] In September 2015, the Board notified pre-1914 water right holders in the Sacramento River watershed and Delta, but not the San Joaquin River watershed, that water was available for their diversions. In November 2015, the Board notified pre-1927 water right holders that water was available in both the Sacramento River watershed and the Sacramento-San Joaquin Delta. Shortly thereafter, the Board notified post-1914 water right holders that water was available for diversion.

7

When the Board dismissed the enforcement proceedings, it rejected the claim that it lacked jurisdiction over pre-1914 appropriative water right holders under section 1052(a). The Board stated, "[BBID and others] object that the Board has no authority to 'regulate' pre-1914 or riparian water rights. These enforcement proceedings are not an effort to regulate the exercise of any valid right. Rather, the enforcement actions seek to prevent the diversion or use of water that is not authorized by the diverter's claim of right. Because the property interest in water is defined, in part, by the priority of the right, a diversion that is out of priority is a diversion that is outside of the bounds of the right." The Board concluded that it "has the authority to take enforcement action pursuant to Water Code section 1052 against the unauthorized diversion of water under claim of a pre-1914 water right."

Although the curtailment notices had been rescinded, respondents maintained their mandate actions challenging the Board's May and June 2015 curtailment notices. The petitions were tried to the court in January 2018 in phase 1 of a trial that was originally expected to have three phases.

In April 2018, the trial court issued a final statement of decision from phase I in favor of respondents. In its order, the trial court observed that "the Board does not dispute that petitioners possess the water rights they claim, and it never purported to curtail or take enforcement action against petitioners on the ground that their asserted water rights were invalid." The court also noted that respondents did not challenge the Board's jurisdiction to curtail post-1914 users.

The trial court understood the Board's jurisdictional argument as limited to its authority under section 1052(a). The court stated, "the Board does not contend that the reasonable use doctrine, the public trust doctrine, or any more general authority to adjudicate or police senior water rights authorized its actions. Further, the Board's curtailment efforts were not based on the specific theory that petitioners were taking

8

stored water released by DWR [(Department of Water Resources)], as opposed to water from any source that was not available under their priority of right."[9]

The trial court decided that "section 1052 does not authorize the Board to 'curtail' or take enforcement action against pre-1914 appropriators based on a general lack of available water under their priority of right, as opposed to a specific trespass against Division 2 water." The court observed that the Board was not "wholly without jurisdiction over these users" and could take certain actions with respect to pre-1914 appropriators under sections 2501 et seq. (comprehensive determination of all water rights in a stream system) and section 1058.5 (emergency regulations) or "under other statutory provisions not addressed by the parties."

After resolving the jurisdictional issue, the trial court went on to find that the Board's issuance of the 2015 curtailment notices violated respondents' due process rights by failing to provide them with a predeprivation hearing or any other opportunity to challenge the bases for the notices. The court addressed the due process issue, even though it was technically moot, as a fundamental issue of broad public interest likely to recur.[10]

Following the trial court's statement of decision, respondents dismissed their remaining causes of action that would have been resolved in phase 2 and phase 3.

In June 2019, the court issued a judgment granting respondents writs of mandate.

The Board timely filed notices of appeal from the judgment, as did the Department of Water Resources, which had intervened in the actions in the trial court. The Board

_____

[9] The Board had argued that the presence of stored water in the Delta at the time of the curtailment notices was relevant to whether the Board had jurisdiction to issue those notices. However, the court's statement of decision expressed "no opinion at this time on the Board's jurisdiction to bring trespass actions against senior users on the express basis that they are taking Division 2 water released by DWR" (i.e., stored water), and the court later noted that it had "not ruled . . . on the stored water issue."

[10] The court subsequently decided that its due process decision applied to "all four notices," including the May 2015 notices concerning only post-1914 rights.

9

appeals the trial court's jurisdictional ruling about the scope of section 1052(a) but does not challenge the trial court's decision that the Board had denied respondents due process of law.

## II. WATER RIGHTS UNDER CALIFORNIA LAW

The parties' competing claims as to the Board's authority under section 1052(a) are rooted in the history of California's complex regulation of water rights.

The California Constitution provides that "because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water. . . . This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained." (Cal. Const., art. X, § 2.)

"Ownership of California's water is vested generally in the state's residents, but individuals and entities can acquire 'water rights,' the right to divert water from its natural course for public or private use." (*Light v. State Water Resources Control Bd.* (2014) 226 Cal.App.4th 1463, 1477–1478 (*Light*); § 102.)

"California operates under the so-called dual system of water rights which recognizes both the appropriation and the riparian doctrines. [Citation.] The riparian doctrine confers upon the owner of land contiguous to a watercourse the right to the reasonable and beneficial use of water on his land. The appropriation doctrine contemplates the diversion of water and applies to 'any taking of water for other than

10

riparian or overlying uses.' [Citation.] Both riparian and appropriative rights are usufructuary only and confer no right of private ownership in the watercourse." (*Shirokow*, *supra*, 26 Cal.3d at p. 307, fn. omitted.)

In applying this body of law, courts "allocate [] water according to preexisting legal rights and relationships." (*City of Barstow*, *supra*, 23 Cal.4th at p. 1242.) "Water right priority has long been the central principle in California water law." (*Id*. at p. 1243.) "In the case of an overdraft, riparian and overlying use is paramount, and the rights of the appropriator must yield to the rights of the riparian or overlying owner." (*Ibid*.) "As a result, appropriators may be deprived of all use of water when the supply is short. In turn, senior appropriators—those who acquired their rights first in time—are entitled to satisfy their reasonable needs, up to their full appropriation, before more junior appropriators are entitled to any water." (*Millview County Water Dist. v. State Water Resources Control Bd.* (2014) 229 Cal.App.4th 879, 890 (*Millview*).) Appropriators do not lose their appropriative rights in times of insufficient water. (*Huffner v. Sawday* (1908) 153 Cal. 86, 92.)

"For historical reasons, California [] subdivides appropriators into those whose water rights were established before and after 1914. Post-1914 appropriators may possess water rights only through a permit or license issued by the Board, and their rights are circumscribed by the terms of the permit or license. Riparian users and pre-1914 appropriators need neither a permit nor other governmental authorization to exercise their water rights." (*Light*, *supra*, 226 Cal.App.4th at p. 1478, fn. omitted.)

Pre-1914 appropriative water rights "originated in the gold rush days when miners diverted water necessary to work their placer mining claims. The miners adopted among themselves the priority rule of 'first in time, first in right,' and California courts looked to principles of equity and of real property law to adjudicate conflicting claims. [Citations.] Thus it was initially the law in this state that a person could appropriate water merely by diverting it and putting it to use. [¶] The first appropriation statute was enacted in 1872

11

and provided for initiation of the appropriative right by the posting and recordation of notice. [Citation.] The nonstatutory method [(common law appropriation)] retained its vitality and appropriative rights were acquired by following either procedure. [Citation.] [¶] Both methods were superseded by the 1913 enactment of the Water Commission Act [(the 1913 Act)], which created a Water Commission and provided a procedure for the appropriation of water for useful and beneficial purposes. The main purpose of the act was 'to provide an orderly method for the appropriation of [unappropriated] waters.' " (*Shirokow*, *supra*, 26 Cal.3d at pp. 307–308, fns. omitted.) As the 1913 Act did not go into effect until December 1914, these rights are referred to as pre-1914 appropriative rights. (*Fall River Valley Irrigation District v. Mt. Shasta Power Corp.* (1927) 202 Cal. 56, 66.)[11]

The 1913 Act created divisions 1 and 2 of the Water Code. (*Shirokow*, *supra*, 26 Cal.3d at p. 308.) Section 1052(a) appears in division 2 of the Water Code. Before turning to our analysis of this provision, we first consider both respondents' contention that the Board's appeal should be dismissed as moot and the pertinent standards of judicial review.

---

[11] We have considered the amicus brief filed by Winnemem Wintu Tribe, Shingle Springs Band of Miwok Indians, Little Manila Rising, and Restore the Delta. Their amicus brief traces the "dark and violent historical underpinnings" of pre-1914 water rights in California. They ask us to consider this history due to the "grave consequences" of restricting the Board's jurisdiction over pre-1914 water rights.

We do not question the importance of the issues identified by amici. However, as the California Supreme Court has observed, " 'our resolution of the legal issue[s] before us does not turn upon our personal views as to the wisdom or morality of the [laws and policies at issue in this case]. Instead, our task involves . . . question[s] of statutory interpretation.' " (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 669.) The policy question of how to treat water rights given their history (as addressed in the amicus brief) and in the face of decreasing water supplies " 'is a decision that only the Legislature can make. The task before us today is one of statutory interpretation.' " (*Id*. at p. 670.)

12

## III. JUSTICIABILITY AND STANDARDS OF JUDICIAL REVIEW

Respondents argue that the Board's appeal is moot because it does not challenge the trial court's finding that respondents were deprived of due process prior to the issuance of the curtailment notices and therefore the notices are invalid even if we were to find error in the trial court's reading of section 1052(a).

The parties previously took the opposite positions on mootness from those they advance in this appeal. In the trial court, the Board argued that respondents' challenges to the curtailment notices were "moot" because none of those notices remained in effect. However, the Board noted below: "If it's taken up on appeal, it would provide guidance to all of the other parties."

Respondents conceded below that the curtailment notices "are no longer in effect" and "no longer in play." Yet they argued in the trial court that the jurisdictional issue was not moot because they and the Board continued to have an "actual controversy" about the Board's "legal conclusions regarding its jurisdiction over pre-1914 water rights." Further, respondents argued that the jurisdictional issue was one of continuing public importance and so should be addressed even if moot because the case fell within "the exception to the mootness doctrine" for an "issue of utmost public importance capable of repetition but [evading] review."

The trial court rejected the Board's argument that respondents' challenge to the May and June 2015 curtailment notices could not prevail because it was moot after the lifting of the curtailment notices. The court, citing *Young v. State Water Resources Control Bd.* (2013) 219 Cal.App.4th 397 (*Young*), found that "even if the issue is technically moot, the Court will reach it under the public interest exception to mootness, since 'the jurisdictional question posed is of continuing public interest and importance.' " (See *id.* at p. 403.)

We similarly decline to dismiss this appeal as moot. While the validity of the 2015 curtailment notices is no longer at issue, the question of whether the Board had the

13

authority to issue the curtailment notices under section 1052(a) remains an important question affecting the public interest that is capable of repetition yet evading review. (See *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1190, fn. 6.)  The trial court's issuance of writs of mandate finding that the Board lacked jurisdiction under section 1052(a) to issue curtailment notices to pre-1914 appropriators based solely on drought conditions has the potential, if erroneous, to impede the Board's future authority to issue such orders.

Having declined to dismiss the appeal as moot, we will address the merits of the question before us.  Before turning to that task, we consider the standards that guide our review.

Respondents filed their petitions pursuant to section 1126, subdivision (b), which provides:  "Any party aggrieved by any decision or order [by the Board] may, not later than 30 days from the date of final action by the board, file a petition for a writ of mandate for review of the decision or order."  (§ 1126, subd. (b).)  Judicial review of the Board's action is governed by Code of Civil Procedure section 1094.5.  (§ 1126, subd. (c).)  "The inquiry in such a case shall extend to the questions whether the [Board] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the [Board] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (Code Civ. Proc., § 1094.5, subd. (b).)

The sole issue in this appeal is the proper construction of section 1052(a).  "We review questions of statutory construction de novo."  (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.)

14

## IV.  THE BOARD'S JURISDICTION UNDER SECTION 1052(A)

### A.  *The Parties' Contentions*

The Board contends that the trial court "fundamentally misread[]" section 1052(a) by construing it as applying only to "*water* subject to this division"—excluding *water* appropriated by pre-1914 appropriators—rather than reading it as applying to "*diversion or use* of water subject to this division."  The Board reads this latter phrase as including all diversions and uses of water, including the allocation of uses by priorities of right.  In the Board's view, the trial court improperly focused on whether, at the time of the 2015 curtailment notices, the Delta contained any unappropriated water rather than considering whether the diversions being made at that time by pre-1914 appropriators were unauthorized under division 2.

The Board argues that because of the operation of the priority rules, all diversions by pre-1914 appropriators are potentially subject to division 2 and thus within the scope of the Board's authority under section 1052(a).  The Board states, "there is no proper basis to distinguish between the Board's authority to prevent the diversion or use of water that is unauthorized because it is in excess of the quantity, place of use, or purpose of use of a diverter's valid right, and the diversion or use of water that is unauthorized because it is in excess of a diverter's priority of right."

Respondents maintain that the trial court properly read section 1052(a) as limiting the Board's authority to "the diversion of water subject to [d]ivision 2" (italics omitted), which excludes any water diverted within the valid scope of a pre-1914 appropriative water right.  They contend that sections 1201 and 1202 "define the water subject to [d]ivision 2" (italics omitted) and do not include within that definition any water diverted within the valid scope of a pre-1914 appropriative water right.  In other words, respondents assert the Board has no jurisdiction under section 1052(a) over diversions of water by pre-1914 appropriators within the valid scope of their rights—even where such diversions might threaten the priority of more senior right holders.

15

B. *Section 1052(a)*

1. <u>Statutory Language and Judicial Interpretations</u>

The Board asserts that section 1052(a) provided it with the authority to issue the 2015 notices challenged by respondents.

The pertinent statutory language consists of a single sentence: "The diversion or use of water subject to this division other than as authorized in this division is a trespass." (§ 1052(a).)

The parties agree that " 'this division' " referenced in section 1052(a) refers to division 2. The question posed by the Board's appeal is which water uses are included in section 1052(a)'s limitation "subject to this division other than as authorized in this division." If respondents' diversions or uses fell within this definition, then the Board had jurisdiction to act under section 1052(a).

As the California Supreme Court has observed, resolution of the meaning of section 1052(a) is "not aided by the omission in division 2 of any definition of the water which is subject to its provisions." (*Shirokow*, *supra*, 26 Cal.3d at p. 306.)

In the absence of such a definition, we apply familiar principles of statutory construction to answer the question. " ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which

16

it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' " (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.)  We also are mindful that " '[l]aws providing for the conservation of natural resources are of great remedial and public importance and thus should be construed liberally . . .' [citation] so as to promote the general object sought to be accomplished." (*Coastside Fishing Club v. California Resources Agency* (2008) 158 Cal.App.4th 1183, 1202.)

We first consider the statutory scheme.  Section 4 of the Water Code provides: "No action or proceeding commenced before this code takes effect, *and no right accrued*, is affected by this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible."  (§ 4, italics added.)  Section 103 provides: "In the enactment of this code the Legislature does not intend thereby to effect any change in the law relating to water rights."  (§ 103.)

Section 1052 appears in chapter 2 of part 1 of division 2 of the Water Code.  This chapter addresses certain aspects of the Board's authority over water rights.  Section 1050 authorizes the Board to enforce division 2 in furtherance of the policy expressed in article X, section 2 of the California Constitution and for the benefit of the people of this state.  Section 1051 grants the Board the authority to investigate streams and other surface water sources to determine whether a use or appropriation of water is lawful.  Section 1052, subdivision (b) authorizes the Attorney General to bring an action on behalf of the Board (or the State) to enjoin use or diversion of water.  Section 1052, subdivision (c) identifies the daily penalties for violations of section 1052(a).  Section 1052, subdivision (d) authorizes the Board to impose administrative civil liability in accordance with the procedure set forth in section 1055.  Section 1058.5 permits the Board to adopt emergency regulations in response to drought conditions.

As the California Supreme Court has summarized, "Part 2 of the division provides a comprehensive scheme for the appropriation of water.  It defines water subject to

appropriation (§§ 1200-1203); declares compliance with the provisions of division 2 to be the exclusive means of acquiring the right to appropriate or use water subject to appropriation (§ 1225); authorizes the board to act upon all applications for permits to appropriate water, to grant permits to take and use water subject to the terms and conditions of the permit, and to collect fees (§§ 1250-1550); and provides for the issuance of licenses confirming the right to appropriate such amount of water as has been beneficially used by the permittees (§§ 1600-1677)." (*Shirokow*, *supra*, 26 Cal.3d at p. 306.) Part 2 also includes section 1831, which authorizes the Board to issue cease and desist orders in various situations, including where there has been a violation "or threatened violation" of section 1052(a). (§ 1831, subd. (d).) Chapter 2 of part 2 governs priorities of right and provides that an "applicant['s]" priority of right is "as of the date of the application." (§ 1450.)

The California Supreme Court has concluded that "[t]he rights *not* subject to the statutory appropriation procedures [of division 2] are narrowly circumscribed by the exception clause of the statute and include only riparian rights *and those which have been otherwise appropriated prior to December 19, 1914*, the effective date of the statute." (*Shirokow*, *supra*, 26 Cal.3d at p. 309, italics added.) This statement, considered in isolation, would vindicate respondents' position in this appeal. Nevertheless, subsequent judicial decisions have concluded that the Board's authority under division 2 does extend to some diversions or uses of water by pre-1914 appropriative right holders.

In *Young*, *supra*, 219 Cal.App.4th 397, the Court of Appeal considered whether the Board "lacks jurisdiction to issue a cease-and-desist order [] for an illegal diversion of water if the diverter claims riparian or pre-1914 appropriative rights." (*Id.* at p. 400.) The Board had asked a diverter "to complete a statement of diversion and use of water from the Middle River in the Sacramento-San Joaquin River Delta and to provide evidence to verify the basis of the asserted water right upon which it was diverting water.

18

Following an investigation, the Water Board issued a draft [cease-and-desist order] against [the diverter] for the alleged unauthorized diversion of water." (*Id.* at p. 401.)

The diverter sought an administrative hearing, but the hearing officer refused to allow the diverter's customers to participate. (*Young, supra,* 219 Cal.App.4th at p. 401.) At the hearing, the diverter established that its "riparian or pre-1914 appropriative water rights" were limited to "no more than 77.7 cubic feet per second (cfs)," and the Board ordered the diverter "to submit monthly diversion records annually, and before diverting any water at a rate in excess of 77.7 cfs, . . . to submit additional evidence regarding water rights and other information to the deputy director of the Water Board." (*Id.* at p. 402.) The diverter's customers sought reconsideration and judicial review by writ of mandate. Their mandate petition was based on due process and lack of jurisdiction grounds. The Board granted reconsideration on due process grounds but maintained that it had jurisdiction to issue the cease-and-desist order. The trial court issued a writ of mandate requiring the Board to set aside the cease-and-desist order. (*Ibid.*)

The Board's appeal raised the issue of "whether the Water Code gives the Water Board jurisdiction in enforcement proceedings to determine initially whether a diverter has either the riparian or pre-1914 appropriative rights it claims." (*Young, supra,* 219 Cal.App.4th at p. 404.) The customers argued "that the Water Code does not provide the authority to the Water Board to adjudicate the validity, the extent, or the forfeiture of riparian or pre-1914 appropriative rights" and that the Board "had no jurisdiction to do so before the enactment of Water Code section 1831, and section 1831, subdivision (e) exempts 'water not otherwise subject to regulation of the board under this part.' " (*Id.* at p. 403.) They claimed that "the diverter divests the Water Board of jurisdiction simply by alleging riparian or pre-1914 appropriative rights." (*Id.* at p. 406.)

The Third District Court of Appeal rejected the jurisdictional argument. It first opined that "essentially the same jurisdictional argument" had been rejected in *Temescal Water Co. v. Department of Public Works* (1955) 44 Cal.2d 90. (*Young, supra,* 219

19

Cal.App.4th at p. 404.)  It stated:  "The Legislature has granted the Water Board power to investigate water use and to ascertain whether water is being diverted other than as authorized in the code.  Water Code section 1052 states, in part:  'The diversion or use of water subject to this division other than as authorized in this division is a trespass[,] . . .  [¶]  . . .  [¶]  [and the Water Board] shall institute in the superior court in and for any county wherein the diversion or use is threatened, is occurring, or has occurred appropriate action. . .' to have such trespass enjoined."  (*Id.* at p. 405.)

The Third District decided:  "The preamble to section 1831 resolves the jurisdictional question.  It states:  'When the *board determines* that any person is violating, or threatening to violate, any requirement described in subdivision (d), the board may issue an order to that person to cease and desist from that violation.' "  (*Young*, *supra*, 219 Cal.App.4th at pp. 405–406.)  "The provisions of part 2 of division 2 of the Water Code referred to in Water Code section 1831, subdivision (e) include the authority to regulate the diversion and use of unappropriated water, including water claimed under pre-1914 appropriative rights but never perfected, and rights perfected under a pre-1914 right but lost through nonuse.  (Wat. Code, §§ 1201, 1202, subd. (b), 1225.)  These provisions also include the authority to regulate water claimed under a riparian right but either not covered by an existing riparian right or water being diverted in excess of a valid riparian right."  (*Id.* at p. 406.)  The Third District held that "pursuant to Water Code section 1831, the Water Board can make a preliminary determination for purposes of enforcement whether the diverter has either the riparian or pre-1914 appropriative rights it claims without filing a lawsuit."  (*Id.* at p. 400.)  *Young*, therefore, stands for the proposition that the Board has the authority under division 2 to adjudicate the validity, extent, and potential forfeiture of pre-1914 appropriative rights.

In *Millview*, the First District Court of Appeal agreed with *Young*'s analysis.  (*Millview*, *supra*, 229 Cal.App.4th at p. 885.)  The Board's action in *Millview* arose from its investigation of a citizen's complaint challenging the propriety of Millview's

20

diversion of water from the Russian River. (*Ibid.*) This investigation concluded that Millview's pre-1914 water right had been "largely forfeited" by "diminished use" for a 20-year period. (*Id.* at p. 884.) Following an evidentiary hearing, the Board made factual determinations and issued a cease-and-desist order limiting Millview's diversion to a maximum of 1.1 cubic feet per second and a total of 15 acre feet per year. (*Id.* at pp. 885, 888.) The Board's cease-and-desist order barred Millview from diverting water beyond the proper scope of its pre-1914 appropriative right. (*Id.* at p. 884.) The trial court, however, overturned the order after finding that "the Board lacks jurisdiction to issue a [cease-and-desist order] with respect to water diverted pursuant to a pre-1914 right of appropriation." (*Id.* at p. 893.)

The First District rejected the trial court's jurisdictional conclusion but affirmed on the ground that the Board's cease-and-desist order was not supported by sufficient evidence. (*Millview*, *supra*, 229 Cal.App.4th at p. 885.) Relying heavily on the Third District's decision in *Young*, which the First District found "straightforward and persuasive" (*id.* at p. 894), the First District decided that the Board had jurisdiction to determine the proper scope of a pre-1914 appropriative water right and "under Water Code section 1831 to issue a [cease-and-desist order] precluding excessive diversion" under that right. (*Id.* at p. 885, fn. omitted.)

The First District reasoned: "Any other rule would permit a diverter to place his or her diversion beyond Board regulation merely by *claiming* to possess, as opposed to validly possessing, a pre-1914 water right." (*Millview*, *supra*, 229 Cal.App.4th at p. 894.) It pointed out that the diversion of water that the Board found did not fall within the proper scope of a pre-1914 water right rendered that diversion an "[u]nauthorized" one. (*Id.* at p. 895.) In a footnote, the First District noted that "[p]revention of unauthorized diversions under section 1052 included the improper diversion of water under asserted pre-1914 appropriative water rights." (*Id.* at p. 896, fn. 12.)

21

These decisions, therefore, establish that the Board has jurisdiction to assess the scope and validity of pre-1914 water rights and determine whether a right holder has diverted water in excess of the right holder's valid right (in which case, the unauthorized diversion would be subject to division 2). Both *Millview* and *Young*, however, examined the Board's authority to determine the scope of a specific appropriative right. In *Millview*, the Board had concluded that the relevant appropriative right was to divert "a maximum rate of 1.1 cubic feet per second [] and a total volume of 15 acre-feet per year." (*Millview*, *supra*, 229 Cal.App.4th at p. 885.) In *Young*, the Board had determined that the right holder had the pre-1914 appropriative right "to divert no more than 77.7 cubic feet per second." (*Young*, *supra*, 219 Cal.App.4th at p. 402.)

Neither decision considered whether the Board has the authority to decide that section 1052(a) has been violated based on a theory that the diversion violates the priority rules applicable to pre-1914 appropriative water right holders in a particular region because of insufficient water availability. The Board contends in this appeal that it does have such authority; respondents argue it does not. The text of section 1052(a) does not directly answer this question. Given this ambiguity, it is appropriate for us to consider the provision's legislative history.

### 2. Legislative History

The language of section 1052(a) originated with the Legislature's 1913 enactment of the Water Commission Act. (Stats. 1913, ch. 586.) The 1913 Act provided: "The state water commission is hereby authorized and empowered to investigate for the purpose of this act all streams, stream systems, portions of stream systems, lakes, or other bodies of water, and to take testimony in regard to the rights to water or the use of water thereon or therein, and to ascertain whether or not such water, or any portion thereof, or the use of said water or any portion thereof, heretofore filed upon or attempted to be appropriated by any person, firm, association, or corporation, is appropriated under the laws of this state." (Stats. 1913, ch. 586, § 10.) The Commission was accorded the

"duty" "[u]pon its own initiative" to undertake an "investigation" and to "make an ascertainment" of the rights of "claimants to the water or the use of water of that stream, stream system, lake, or other body of water." (Stats. 1913, ch. 586, § 24.)

The 1913 Act recognized that "[a]ll existing lawful appropriations of water or the use thereof, shall be and hereby are respected and upheld to [the] extent of the amount of water appropriated and actually put or in [the] process of being put from the initial date of the act of appropriation, with due diligence in proportion to the magnitude of the work necessary properly to utilize the water for the useful or beneficial purpose for which it was appropriated, or for which it is being used." (Stats. 1913, ch. 586, § 33.)

Further, "[t]he power to supervise the distribution of water in accordance with the priorities established under this act, when such supervision does not contravene the authority vested in the judiciary of the state, is hereby vested in the state water commission." (Stats. 1913, ch. 586, § 37.)

The 1913 Act also contained the precursor to section 1052(a). It stated: "The diversion or use of water subject to the provisions of this act other than as it is in this act authorized is hereby declared to be a trespass, and the state water commission is hereby authorized to institute in the superior court . . . appropriate action to have such trespass enjoined." (Stats. 1913, ch. 586, § 38.) Like the current statutory scheme, the 1913 Act provided: "The word 'water' in this act shall be construed as embracing the term 'or use of water.' " (Stats. 1913, ch. 586, § 42; § 1000.)

The Water Code was enacted in 1943. (Stats. 1943, ch. 368.) It provided, "In the enactment of this code the Legislature does not intend thereby to effect any change in the law relating to water rights." (§ 103; Stats. 1943, ch. 368.) Many of the Water Code's current statutes have remained unchanged since that date. (See §§ 102, 104, 105; Stats. 1943, ch. 368, §§ 102, 104, 105.) Former section 1052 was part of the 1943 Act, and its original language is nearly identical to what currently appears in section 1052(a) and very similar to the language in the 1913 Act: "The diversion or use of water subject to the

provisions of this division other than as authorized in this division is a trespass." (Stats. 1943, ch. 368, § 1052.)

The only subsequent change to this language was a 1987 amendment that changed "subject to the provisions of this division" to "subject to this division." (Stats. 1987, ch. 756, § 1.) The language in section 1052(a) has otherwise remained unchanged.

This legislative history demonstrates that the Legislature has always restricted the Board's authority over pre-1914 water rights while at the same time granting the Board broad authority over post-1914 water rights. The precursor to section 1052(a) was part of the 1913 Act, and it has been a part of California's water laws ever since. The 1913 Act itself distinguished between the Board's power over pre-1914 appropriative rights and post-1914 appropriative rights. The 1913 Act explicitly provided that "existing lawful appropriations of water or the use thereof [that is, pre-1914 appropriative rights], *shall be and hereby are respected and upheld* to [the] extent of the amount of water appropriated." (Stats. 1913, ch. 586, § 33, italics added.) The 1913 Act also provided, "The power to supervise the distribution of water in accordance with the priorities established under this act, when such supervision does not contravene the authority vested in the judiciary of the state, is hereby vested in the state water commission." (Stats. 1913, ch. 586, § 37.)

We now turn to the application of section 1052(a) to the facts here.

*C.  Analysis*

We begin with the Board's contention that the trial court misread section 1052(a) to apply only to "*water* subject to" division 2 rather than to "*diversion or use of water* subject to" division 2. We agree with the Board that the language of section 1052(a) does not refer to the corpus of the water but instead to diversions or uses of water. This construction is the only possible one because the Water Code expressly provides that " 'water' includes the term 'use of water.' " (§ 1000.)

24

As the parties acknowledge, water rights do not give anyone ownership of the corpus of any "water" but only the limited right to divert or use water. Division 2 itself explicitly provides: "Nothing in this division shall be construed as giving or confirming any right, title, or interest to or in the corpus of any water." (§ 1001.) Since water rights are well-established to be "usufructuary," they do not grant any right to "water" but only the right to use water. (Compact Ed. of the Oxford English Dict. (1971) p. 3576 [usufructuary refers to the right to use property of another].) Thus, our construction of section 1052(a) starts with this understanding of its language.

While we agree with the Board that section 1052(a) extends to diversions and uses of water subject to division 2, we reject the Board's contention that this means that section 1052(a) grants the Board the authority to police the exercise of valid pre-1914 appropriative water rights on the theory that the diverter might have violated the priority rules applicable to all water right holders.

The Board concentrates on the "subject to" division 2 language and argues that pre-1914 appropriative rights are "subject to" division 2. It is true that, in certain respects, pre-1914 appropriative rights are "subject to" division 2. For example, sections 1011, 1011.5, and 1017, which are part of division 2, expressly address pre-1914 appropriative rights. But statutory construction requires us to construe the language of section 1052(a) as a whole. That means that we must also consider the "authorized in" division 2 language that follows the "subject to" language in section 1052(a). *No* pre-1914 appropriative rights are "authorized in" division 2 because those rights were acquired before the enactment of the 1913 Act that required authorization for appropriations of water. Thus, all diversions and uses of water under valid pre-1914 appropriative rights are "other than as authorized in" division 2. (§ 1052(a).)

The Board contends that "diversions that exceed the scope of any existing right are subject to enforcement by the Board." This broad assertion of authority by the Board, however, ignores the justification it asserted in the notices at issue in this appeal. In the

25

June 12, 2015 notice in which the Board announced curtailment of "certain pre-1914 claims of right commenced during or after 1903" (capitalization & boldface omitted), the Board stated, "the existing water supply in the Sacramento-San Joaquin watersheds and Delta watersheds is insufficient to meet the needs of some pre-1914 claims of right." It told those diverters, "even if there is water physically available at your point of diversion, that water is necessary to meet more senior water right holders' needs."

The accuracy of the Board's assertion that there would be insufficient water to meet the needs of some pre-1914 appropriative right holders is not material to this appeal. That the Board asserted jurisdiction based on this conclusion is the central point.

The Board claims that it has the authority under section 1052(a) to enforce priorities of right *among* pre-1914 appropriative right holders due to the lack of sufficient water to serve all pre-1914 appropriative right holders. Yet nothing in division 2 grants the Board this authority. "[P]riority of right is important only when the natural or abandoned flows in a watercourse are insufficient to supply all demands being made on the watercourse—i.e., during periods of water shortage." (*El Dorado Irrigation Dist. v. State Water Resources Control Bd.* (2006) 142 Cal.App.4th 937, 964.) "As for the determination of an appropriator's priority over other appropriators, *for appropriations since 1914* an appropriator's priority is generally fixed by the date of his or her application to appropriate the water. (See § 1450.)" (*Id.* at p. 962, italics added.) While the Board has the authority under section 1450 (which is in division 2) to police priorities among post-1914 appropriative right holders, nothing in division 2 gives it that authority over pre-1914 appropriative right holders. The absence of such a provision is critical because the Water Code explicitly provides that "no right accrued" "before this code takes effect . . . is affected by this code." (§ 4.) And the Legislature expressly stated that the Water Code was "not intend[ed] [] to effect any change in the law relating to water rights." (§ 103.) Since the Board (and its predecessors) had no authority over pre-1914

26

appropriative right holders prior to the enactment of the 1913 Act, it lacks authority under section 1052(a) to police their priorities of right.

The Board's proposed reading of section 1052(a) to encompass any water right holder in a time of drought gives no effect to the provision's phrase "authorized in this division." (§ 1052(a).) In essence, the Board asks us to delete that phrase from the provision and instead interpret it to read: "The diversion or use of water subject to this division other than as authorized is a trespass." But fundamental rules of statutory interpretation require us to " 'giv[e] significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166.) We cannot ignore the limits on section 1052(a) imposed by its restriction to the "diversion or use of water subject to this division other than as *authorized in this division*." (§ 1052(a), italics added.)

As the legislative history recited above indicates, the Legislature took great pains to preserve existing appropriative rights when it enacted the 1913 Act. In section 33, the 1913 Act stated: "All existing lawful appropriations of water or the use thereof, shall be and hereby are respected and upheld." (Stats. 1913, ch. 586, § 33.) In the provision that is the direct precursor to section 1052(a), the 1913 Act stated: "The diversion or use of water *subject to the provisions of this act* other than as it is in this act authorized is hereby declared to be a trespass." (Stats. 1913, ch. 586, § 38, italics added.) This language highlights that the provision did not apply to "existing lawful appropriations of water," because those appropriations were not subject to the Act.

The Board points out that other parts of division 2 apply to pre-1914 right holders. While true, the observation does not assist the Board. For example, the Board points to its authority over stream systems. (See § 2500 et seq.) Section 2501 provides, "The board may determine, in the proceedings provided for in this chapter, *all rights to water of a stream system whether based upon appropriation, riparian right, or other basis of right*." (§ 2501, italics added.) This broad language (which does not appear in section

27

1052(a)) throws into relief the limited scope of section 1052(a). It highlights that the Legislature knows how to vest the Board with broad authority over all water rights in a system if it so chooses.

Although the Board asserts it possessed the authority to issue the 2015 notices under section 1052(a) on the theory that some pre-1914 appropriative right holders might have infringed the priority of other senior right holders and therefore their diversions were "unauthorized," the Board has very limited authority in this regard. "[N]otwithstanding its power to protect the public interest, the Board plays a limited role in resolving disputes and enforcing rights of water rights holders, a task mainly left to the courts." (*United States v. State Water Resources Control Bd*. (1986) 182 Cal.App.3d 82, 104, italics omitted.) Whether this approach to water rights in California represents sound policy in a time of increasing water scarcity is a question for the Legislature.

When we consider section 1052(a) in context, it is clear that it does not apply to the exercise of what are otherwise valid pre-1914 appropriative rights on a generalized theory of insufficient water to satisfy the priority rules. If the holder of a *post*-1914 appropriative right or someone without a valid pre-1914 appropriative right uses or diverts water, section 1052(a) applies. The same is true where someone claiming a pre-1914 appropriative right is found to be exceeding the scope of their specific right or the claimed right is found to be invalid, for example because it has been forfeited.

We reject the Board's arguments to the contrary. The Board contends that the trial court erroneously failed to consider whether there was " 'stored water' " in the Delta at the time of the 2015 curtailment notices. It argues that because pre-1914 appropriative water right holders have no right to use or divert " 'stored water,' " section 1052(a) authorized the Board to determine that the use or diversion of water by pre-1914 water right holders was a trespass. The Board claims that "[s]tored and released waters were present at the time the Board issued the Notices, and their presence was specifically identified as one basis for the Notices."

28

This argument ignores the stated basis for the challenged 2015 curtailment notices. The notices clearly identified the sole basis for the curtailments as the fact that, "due to ongoing drought conditions, there is insufficient water in the system to service their claims of right" "until water conditions improve." The notices did acknowledge that stored water might be present in the Delta, but they did not premise the need for curtailment on that possibility. The notices said only: "Even if there is water physically available at your point of diversion, that water is necessary to meet more senior water right holders' needs or the water may be released previously stored water which must continue instream to serve its intended beneficial use." Because the Board did not base these notices on the presence (or even possible presence) of stored water in the Delta, the trial court properly concluded that the Board's authority to act under section 1052(a) could not be upheld on that basis.

The Board urges us to decide that section 1052(a) permits the Board to find a trespass "in times of extreme drought" based on projected violations of the priority rules. (Capitalization & boldface omitted.) It argues: "If the trial court decision is affirmed, section 1052 in its entirety would be rendered wholly ineffective during severe droughts. This is not an outcome the Legislature intended." Nothing in section 1052(a) says anything about the existence of drought or extreme drought conditions.[12] Moreover, that section 1052(a) does not apply where the total water supply is projected to be insufficient to fulfill the appropriative rights of pre-1914 right holders does not leave the Board without any authority in times of drought.

The Board has long had the authority to adopt "emergency regulation[s]" "to require curtailment of diversions *when water is not available* under the diverter's priority of right, or in furtherance of any of the foregoing, to require reporting of diversion or use or the preparation of monitoring reports." (§ 1058.5, italics added; Stats. 1991, ch. 12,

_____

[12] We recognize that section 1052, subdivision (c) provides for higher fines under certain circumstances when it is "critically dry." (§ 1052, subd. (c)(1).)

29

§ 3 [original version of § 1058.5].)  While each emergency regulation is effective for only a one-year period, the Board may renew a regulation for additional one-year periods if the emergency conditions continue to exist.  (§ 1058.5, subd. (c).)  The Board has utilized its emergency regulation authority to enact regulations authorizing it to curtail water use by classes of water right holders during droughts.  (Cal. Code Regs., tit. 23, Div. 3, ch. 2, art. 24, sec. 876.1.)[13]  Neither section 1058.5 nor any of these regulations contains the limits found in section 1052(a).

Section 876.1, which applies specifically to the Delta, provides that "when flows are determined to be insufficient to support all diversions, [the Board's designee] may issue curtailment orders as defined in section 877.1 to water right holders and claimants in the Delta Watershed in order of water right priority, requiring the curtailment of water diversion under designated water rights and claims, except as provided in sections 878, 878.1, 878.2 and 879.1 subdivision (b)."[14]  (Cal. Code Regs., § 876.1, subd. (b).)

*Stanford Vina Ranch Irrigation Co. v. State of California* (2020) 50 Cal.App.5th 976 illustrates this authority.  In that case, the appellant, who held post-1914 appropriative rights, challenged both emergency regulations adopted by the Board in 2014 and 2015 and the Board's curtailment orders under those regulations, which barred all diversions from Deer Creek during certain time periods to protect threatened fish.  (*Id.* at pp. 983–984, 986–992, 1007.)  The Third District Court of Appeal upheld both the regulations and the curtailment orders because they were within the power granted to the Board by the Legislature when the Board enacted the emergency regulations.  (*Id.* at pp. 1005–1008.)

---

[13] Further references to regulations are to this title.
[14] California Code of Regulations, section 877.1 defines the Delta and defines curtailment orders.  (Cal. Code Regs., § 877.1, subds. (a), (d).)

We will not speculate about why the Board did not choose to utilize emergency regulations in 2015 during a four-year drought.  Had it done so, the curtailment orders at issue here might well have been within its authority.

The Board argues that our reading of section 1052(a) conflicts with *Young* and *Millview* and with the decision of the California Supreme Court in *Meridian, Ltd., v. San Francisco* (1939) 13 Cal.2d 424.  We disagree.  *Meridian* did not involve the Board's authority at all or its authority under the precursor to section 1052(a), as the plaintiff in that case was a private riparian owner and appropriator.  (*Id.* at p. 429.)  Furthermore, nothing the California Supreme Court said in *Meridian* established that former section 38 or section 1052(a) permits the Board to enjoin as a trespass a diversion or use of water under a valid pre-1914 appropriative water right.

The Board's reliance on *Young*, *supra*, 219 Cal.App.4th 397 is also misplaced.  As described above, the Board decision challenged in *Young* was a factual determination— made after an investigation and an evidentiary hearing—that a particular diverter's pre-1914 appropriative right was limited to a specific amount of water.  The Board is clearly authorized to undertake investigations and to make that type of determination—of the valid scope of a pre-1914 appropriative water right—after an evidentiary hearing.

Even the Water Commission had the authority to make such a determination under the 1913 Act because it had been specifically granted the authority to undertake an "investigation" and to "make an ascertainment" of the rights of "claimants to the water or the use of water of that stream, stream system, lake or other body of water." (Stats. 1913, ch. 586, § 24.)  This authority has never been withdrawn.

The current statutory scheme provides (as it did at the time of *Young*):  "The board for the purpose of this division may:  [¶]  (a) Investigate all streams, stream systems, portions of stream systems, lakes, or other bodies of water.  [¶]  (b) Take testimony in regard to the rights to water or the use of water thereon or therein.  [¶]  (c) Ascertain whether or not water heretofore filed upon *or attempted to be appropriated* is

31

appropriated under the laws of this State." (§ 1051, italics added.) The Board's statutory authority to investigate and determine the validity of appropriative water rights does not exclude claims of pre-1914 appropriative rights from its scope.

The case before us, unlike *Young*, does not involve a challenge to a factual determination by the Board after an investigation and an evidentiary hearing that a particular pre-1914 appropriative water right is limited to a specific amount of water. The 2015 curtailment notices at issue were not based on any factual determination concerning the scope or validity of any particular water rights. The notices curtailed respondents' pre-1914 appropriative water rights in their entirety as a class (pre-1914, post-1903 appropriative water right holders on the Delta) solely due to the Board's determination that the Delta lacked sufficient water to satisfy all pre-1914 appropriative right holders. The trial court here decided only whether these notices were authorized by section 1052(a). The Third District's decision in *Young* is not in conflict with the trial court's decision.

The First District's decision in *Millview*, *supra*, 229 Cal.App.4th 879 is similarly distinguishable. *Millview*, like *Young*, did not consider whether the Board has the authority to curtail a diversion under a pre-1914 appropriative water right claim without investigating the claim's scope or validity and without making any factual determination that the claim is fully or partially invalid.

In sum, while the statutory scheme provides the Board with the power to make a factual determination that a particular pre-1914 appropriative water right claim is not valid or that the holder is exceeding the scope of the right, the authority conferred by section 1052(a) does not include the power to curtail an entire class of pre-1914 appropriative water rights solely on the basis that the Board believes that there will be insufficient water to serve all pre-1914 appropriative rights.

For these reasons, we agree with the trial court's conclusion that the Board lacked authority under section 1052(a) to issue the 2015 curtailment notices to respondents. We

32

emphasize that our decision addresses only the scope of the Board's authority under section 1052(a).  Nothing we have said in this opinion precludes the Board from properly exercising its authority over pre-1914 appropriative water right holders under the public trust doctrine, applicable emergency regulations, or other appropriate authority.

## V.  DISPOSITION

The trial court's judgment is affirmed.

_____

                                                   Danner, J.

WE CONCUR:

_____

Greenwood, P.J.

_____

Wilson, J.

**H047270**
***In re California Water Curtailment Cases***

Santa Clara County Superior Court No.: 1-15-CV285182, JCCP No. 4838

Trial Judge: Hon. Brian Walsh

Counsel for Defendant/Appellant, State Water Resources Control Board: Rob Bonta, Attorney General, Robert W. Byrne, Senior Assistant Attorney General, Tracy L. Winsor, Supervising Deputy Attorney General, Allison Goldsmith, Kate D. Fritz, Matthew G. Bullock, Deputy Attorneys General

Counsel for Intervenor/Appellant, Department of Water Resources:  Rob Bonta, Attorney General, Robert W. Byrne, Senior Assistant Attorney General, Laura J. Zuckerman, Russell B. Hildreth, Supervising Deputy Attorneys General, Carolyn Nelson Rowan, Deputy Attorney General

Counsel for Amicus Curiae on behalf of Defendant/Appellant, State Water Resources Control Board: Environmental Law Clinic, Mills Legal Clinic at Stanford Law School, Deborah A. Sivas, Matthew J. Sanders, Stephanie L. Safdi

Counsel for Plaintiff/Respondent, Byron-Bethany Irrigation District: Somach Simmons & Dunn, Michael E Vergara, Theresa C. Barfield, Alyson E. Ackerman

Counsel for Plaintiff/Respondent, Central Delta Water Agency: Nomellini Grilli & McDaniel, Dante John Nomellini, Sr., Dante John Nomellini, Jr., Daniel Allen McDaniel; Spaletta Law PC, Jennifer L. Spaletta

Counsel for Plaintiffs/Respondents,
Patterson Irrigation District and Banta Carbona Irrigation District:
Herum\Crabtree\Suntag, Steven A. Herum, Jeanne M. Zolezzi, Lilliana Freeman

Counsel for Plaintiffs/Respondents, San Joaquin Tributaries Authority and South San Joaquin Irrigation District: Paris, Kincaid & Wasiewski, LLP, Valerie C. Kincaid, Timothy J. Wasiewski

Counsel for Plaintiff/Respondent, South Delta Water Agency: Mohan, Harris, Ruiz, Wortmann, Perisho & Rubino LLP, S. Dean Ruiz; John Henry Herrick

Counsel for Plaintiff/Respondent, Oakdale Irrigation District: Tim O'Laughlin PLC, Tim O'Laughlin


**H047270**
*In re California Water Curtailment Cases*